UNITED STATES, Appellee

v.

Michael D. STRAND, Corporal
United States Marine Corps, Appellant

No. 03-0557

Crim. App. No. 200000275

United States Court of Appeals for the Armed Forces

Argued January 14, 2004

Decided May 10, 2004

BAKER, J., delivered the opinion of the Court, in which CRAWFORD, C.J., GIERKE, EFFRON and ERDMANN, JJ., joined.

Counsel

For Appellant:  Lieutenant Colonel Eric B. Stone, USMC (argued).

For Appellee:  Lieutenant Frank L. Gatto, JAGC, USNR (argued); Commander Robert P. Taishoff, JAGC, USN (on brief); Lieutenant Colonel John F. Kennedy, USMC.

Military Judge:  R. W. Redcliff

**THIS OPINION IS SUBJECT TO EDITORIAL CORRECTION BEFORE FINAL PUBLICATION**.

Judge BAKER delivered the opinion of the Court.

Appellant was tried by a general court-martial composed of officer and enlisted members.  Pursuant to his mixed pleas, Appellant was convicted of one specification of assault consummated by a battery and three specifications of adultery in violation of Articles 128 and 134, Uniform Code of Military Justice [hereinafter UCMJ], 10 U.S.C. §§ 928 and 934 (2000), respectively.  He was sentenced to a bad-conduct discharge, confinement for thirty months, total forfeiture of all pay and allowances, and reduction to the lowest enlisted grade.  The convening authority approved the sentence as adjudged, but in an act of clemency suspended confinement in excess of 24 months for a period of six months from the date of his action, and purported to waive the "automatic reduction" and the automatic forfeitures for a period of six months.[1]  The Navy-Marine Corps Court of Criminal Appeals affirmed the findings of guilty and the sentence in an unpublished opinion.  United States v. Strand, NMCM 200000275 (N-M. Ct. Crim. App. 2002).

This Court granted review of the following issue:

---

[1] We note that the convening authority's action erroneously uses the word "waived" with respect to the reduction for six months.  A corrected action should be issued.

> WHETHER THE LOWER COURT ERRED IN HOLDING THAT
> THE MILITARY JUDGE DID NOT HAVE AN
> AFFIRMATIVE DUTY TO SUA SPONTE REMOVE THE
> SENIOR OFFICER OF THE PANEL FOR IMPLIED BIAS
> BECAUSE HE WAS THE SON OF THE CONVENING
> AUTHORITY.

Based on the totality of the circumstances particular to this case, we hold that the military judge did not abuse his discretion, and therefore the lower court did not err.

FACTS

Appellant, a 26-year-old corporal with approximately eight years of service, was charged with multiple incidents of sexual misconduct. The majority of these incidents occurred on base. Although Appellant was married, he engaged in sexual intercourse with some of the wives of his fellow Marines as well as a subordinate Marine assigned to his unit. Various members of Appellant's unit were aware of his misconduct.

On October 15, 1998, the Commanding General of Marine Corps Base Hawaii, Kaneohe Bay, Brigadier General (BGen) Fields, signed convening order number 5-98 which convened a general court-martial "to try such persons as may be brought before it." First Lieutenant (1stLt) M. L. Olson, Jr., was one of the ten officer members originally detailed to this court-martial panel. On December 28, Appellant's case was referred to trial under convening order 5-98. On

February 25, 1999, however, the convening order was modified due to Appellant's written request for enlisted members. As a result, eight of the original ten officers detailed to the court-martial were relieved leaving only Major (Maj) J. R. Armour and 1stLt Olson. The modified convening order was signed by "M. L. Olson, U.S. Marine Corps, Commander." Colonel (Col) Olson was serving as the acting commander at the time and is the father of 1stLt Olson.

1stLt Olson's court-martial member questionnaire identified him as a 26-year old supply officer with two years and 10 months of active duty service. It also indicated that he had not previously served on a court-martial. In response to the question "What are/were your parent's . . . occupations?", 1stLt Olson wrote of his father "USMC active duty."

During voir dire, the military judge asked prospective panel members whether they knew "the convening authority in this case, Commander, Marine Corps Base Hawaii, specifically, Brigadier General Fields or in his absence Colonel Olson?" The military judge received positive responses from all the members except one. Individual voir dire followed.

4

At the close, of 1stLt Olson's voir dire, trial counsel inquired regarding his relationship with the convening authority. The following dialogue occurred.

> TC: Sir, there was actually one other question. The relationship between the convening authority and the member.
>
> MJ: With regard to reporting seniors?
>
> TC: No, sir. Actually --
>
> MJ: Oh, Colonel Olson? Are you related to Colonel Olson?
>
> MBR: (1stLt Olson) Yes, sir. He's my father, sir.
>
> MJ: He's your dad?
>
> MBR: (1stLt Olson) Yes, sir.
>
> MJ: Okay. Well, thank you for bringing that out. Have you had any discussions with the Colonel about this case?
>
> MBR: (1stLt Olson) No, sir.
>
> MJ: Has he ever discussed his views on military justice with you?
>
> MBR: (1stLt Olson) Not that I can remember, sir. I'm sure we've had conversations in the past, but nothing that comes to mind.
>
> MJ: Any conversations with regard to the nature of these allegations that he's had with you?
>
> MBR: (1stLt Olson) No, sir.
>
> MJ: I gather you have frequent interaction with him?
>
> MBR: (1stLt Olson) Yes, sir.

> MJ: Does he know you have been detailed?  I gather he does know, since he signed the convening order.
>
> MBR: (1stLt Olson) Yes, sir.
>
> MJ: No discussions at all about assigning you to this court-martial?
>
> MBR: (1stLt Olson) No, sir.
>
> MJ: Do you feel that his assignment of you to this court-martial in any way is reflective of how he feels this case ought to come out?
>
> MBR: (1stLt Olson) No, sir.
>
> MJ: Do you feel that you would have a need to explain any of the verdicts to him?
>
> MBR: (1stLt Olson) No, sir.
>
> MJ: Further inquiry, counsel?
>
> TC: No, sir.
>
> DC: None, sir.

At the conclusion of voir dire, defense counsel challenged four officers for cause.  Defense counsel challenged Maj Kelly because his father was a New York City police officer and he challenged Maj Armour due to his "experience as the Family Service Center Director."  He challenged Captain (Capt) S. on the ground that Capt S's spouse had been the victim of a rape.  Finally, defense counsel challenged Chief Warrant Officer 3 (CWO3) Gandy for cause on account of his service as personnel officer with Combat Service Support Group 3 since this service may have

exposed him to allegations involving a potential witness in the case. After hearing argument from both sides regarding each challenge, the military judge granted defense counsel's challenges to Maj. Armour, Capt S, and CWO3 Gandy, but denied his challenge to Maj Kelly. Defense Counsel subsequently used his peremptory challenge against Maj Kelly. At no point throughout this entire process did defense counsel seek to challenge 1stLt Olson.

Nonetheless, after defense counsel had completed his challenges, trial counsel once again raised concern regarding 1stLt Olson's presence with the military judge. The record reflects the following dialogue:

> TC: . . . Sir, just one final matter. As a matter of record, the First Lieutenant who is the son of the convening authority, I didn't know if the military judge wanted to --
>
> MJ: Well, neither side challenged for cause or peremptorily First Lieutenant Olson --
>
> TC: Aye, aye, sir.
>
> MJ: -- so I see no need to make further findings as to that matter. His answers were fairly -- quite clear and direct on individual voir dire.
>
> DC: Sir, can we have one moment?
>
> MJ: Certainly.
>
> [Accused and counsel conferred.]
>
> MJ: Do you wish a recess outside of our presence?

DC: No, sir, that's okay.

[Accused and counsel conferred further.]

TC: Sir, the government requests a brief recess.

MJ: Very well.  Court is in recess until 1500 hours.

[The court recessed at 1450, 8 March 1999.]

[The court was called to order at 1504, 8 March 1999.]

MJ: The court will come to order.  Let the record reflect that all parties who were present prior to the court's last recess are once again present before the court.  The members are still absent.

Counsel, we were completing the challenge process.  Is there anything further for the court before we have the members return and excuse the members who have been excused?

TC:  No, sir.

DC:  No, sir.

1stLt Olson was the only commissioned officer who remained on the panel after the challenges, therefore, he was designated president of the panel.  The remainder of the panel was comprised of a master gunnery sergeant (E-9), three master sergeants (E-8), and a gunnery sergeant (E-7). Col Olson was the reviewing officer for at least one member of the panel.  As stated above, Appellant was subsequently convicted of certain offenses on March 11, 1999.  After

8

trial, defense counsel submitted matters pursuant to Rule for Courts-Martial 1105 [hereinafter R.C.M.] to the convening authority, but did not raise the issue of 1stLt Olson's membership on the panel or otherwise seek relief on account of the panel's membership. BGen Fields took action on Appellant's court-martial on January 12, 2000. Col Olson did not take action on the record, and is not otherwise identified in the record or by the parties as having taken any further action in regard to Appellant's court-martial other than signing his October 15 order modifying the original court-martial panel.

Appellant now argues on appeal that it was plain error for the military judge to permit the son of the acting convening authority to sit as president of this court-martial. In light of R.C.M. 912 and the doctrine of implied bias, Appellant argues that the judge had a duty to sua sponte excuse 1stLt Olson in the interest of maintaining public confidence in the legality, fairness, and impartiality of the military justice system. In support of this argument, Appellant suggests that 1stLt Olson's presence could have chilled the deliberations of the senior enlisted members of the panel by suggesting that the command was particularly interested in the outcome of

this case and out of concern that 1stLt Olson might report to his father on their views in deliberation.

The Government in turn argues that Appellant affirmatively waived any implied bias objection to 1stLt Olson. Alternatively, the Government argues the judge did not commit plain error because there is no per se rule against members sitting who have familial relationships with the convening authority. Finally, the Government contends that 1stLt Olson's relationship was fully disclosed and Appellant has not demonstrated circumstances that would otherwise warrant invocation of the doctrine of implied bias.

## DISCUSSION

This Court has held that an accused "has a constitutional right, as well as a regulatory right, to a fair and impartial panel." United States v. Wiesen, 56 M.J. 172, 174 (C.A.A.F. 2001). Thus, "Rule for Courts-Martial 912(f)(1)(N) . . . requires that a member be excused for cause whenever it appears that the member '[s]hould not sit as a member in the interest of having the court-martial free from substantial doubt as to legality, fairness, and impartiality.'" United States v. Miles, 58 M.J. 192, 194 (C.A.A.F. 2003). While this rule applies to

both actual and implied bias, the thrust of this rule is implied bias. United States v. Minyard, 46 M.J. 229, 231 (C.A.A.F. 1997). Moreover, "the focus of this rule is on the perception or appearance of fairness of the military justice system[,]" United States v. Dale, 42 M.J. 384, 386 (C.A.A.F. 1995), since "the rule 'reflects the President's concern with avoiding even the perception of bias, predisposition, or partiality.'" Minyard, 46 M.J. at 231 (citing United States v. Lake, 36 M.J. 317, 323 (C.M.A 1993)).

It is clear that a military judge may excuse a member sua sponte. R.C.M. 912(f)(4). The judge's decision whether or not to excuse a member sua sponte is subsequently reviewed for an abuse of discretion. United States v. Downing, 56 M.J. 419, 422 (C.A.A.F. 2002); United States v. Armstrong, 54 M.J. 51, 53 (C.A.A.F. 2000). This Court has given the "military judge great deference when deciding whether actual bias exists because it is a question of fact, and the judge has observed the demeanor of the challenged member." United States v. Napolitano, 53 M.J. 162, 166 (C.A.A.F. 2000). See United States v. Warden, 51 M.J. 78, 81 (C.A.A.F. 1999). This Court, however, gives less deference to the military judge when reviewing a "finding on implied bias because it is

11

objectively 'viewed through the eyes of the public.'" Napolitano, 53 M.J. at 166 (quoting Warden, 51 M.J. at 81). "Implied bias is viewed through the eyes of the public, focusing on the appearance of fairness." United States v. Rome, 47 M.J. 467, 469 (C.A.A.F. 1998). As a result, an objective standard is used when reviewing the judge's decision regarding implied bias.

Thus, "issues of implied bias are reviewed under a standard less deferential than abuse of discretion but more deferential than de novo." Miles, 58 M.J. at 195 (citing Downing, 56 M.J. at 422)(citations omitted). This Court has generally found that "when there is no actual bias, 'implied bias should be invoked rarely.'" Warden, 51 M.J. at 81-82. "[D]ue process does not require a new trial every time a juror has been placed in a potentially compromising situation." United States v. Lavender, 46 M.J. 485, 488 (C.A.A.F. 1997)(quoting Smith v. Phillips, 455 U.S. 209, 217 (1982)). Instead, this Court has observed that "implied bias exists when, regardless of an individual member's disclaimer of bias, 'most people in the same position would be prejudiced [i.e. biased].'" Napolitano, 53. M.J. at 167 (citations omitted). In making judgments regarding implied bias, this Court looks at the totality of the factual circumstances.

12

This case offers facts of clarity and consequence on both sides of the implied bias equation. On the one hand, 1stLt Olson was the son of the acting convening authority who signed an order relieving eight officers from serving on Appellant's panel while leaving only his son and one other officer from an original list of ten. This was done without explanation in the record. Further, the case at hand involved multiple instances of sexual misconduct by Appellant with the on-base dependents of Marines. While the base chief of staff would surely take interest in matters of military justice, arguably he would take particular interest in a case involving multiple instances of on base misconduct detrimental to morale.

1stLt Olson was also the only commissioned officer who served on Appellant's panel. As a result, he served as the president of the panel and not just as a member. Based on these facts, Appellant argues an outside observer might conclude that the senior enlisted members would feel an implicit command presence in the deliberation room in the form of the chief of staff/qua acting convening authority's son's presence. Finally, the Government was concerned enough about the appearance issue to twice affirmatively inquire of the military judge whether 1stLt Olson should be excused from the panel.

On the other hand, defense counsel apparently did not share trial counsel's concerns. Defense counsel did not challenge 1stLt Olson for cause, nor did counsel use his peremptory challenge against 1stLt Olson or state that he would have done so if he had not first used it against Maj Kelly. Moreover, the record reflects that defense counsel was aggressive in his use of challenges. Among other things, he challenged Maj Kelly on the ground that his father was a police officer.

This is not a case where the salient fact went unnoticed or unexamined on the record. Defense counsel had a number of opportunities to reflect on his position and to challenge 1stLt Olson. During the challenge process, trial counsel once again mentioned the relationship between Col Olson and 1stLt Olson. Defense counsel appeared to discuss the situation with his client and after a brief recess did not challenge the member.

Defense counsel might well have had tactical reasons for not challenging 1stLt Olson's presence on the panel. Nonetheless, the question remains whether based on the totality of the circumstances identified above, the military judge should have dismissed 1stLt Olson sua sponte in order to ensure public confidence in the legality, fairness, and impartiality of Appellant's court-martial.

See United States v. Velez, 48 M.J. 220, 225 (C.A.A.F. 1998).

Based on the particular facts here, we think not. It is noteworthy that the convening authority did not remove his own son from Appellant's court-martial while relieving eight other officers from this duty, but Appellant has not challenged the selection of members on Article 25, UCMJ, 10 U.S.C. § 825 (2000) grounds. Ultimately, however, we are satisfied that the transparent nature of the military judge's inquiry with Appellant and his counsel present, along with the deliberate manner of the military judge's voir dire, afforded counsel ample opportunity to explore any potential concerns regarding 1stLt Olson's presence on the panel. Further, defense counsel's demonstrated capability to identify matters of potential conflict regarding other members along with his ample use of the challenge mechanism removes concern that counsel "was asleep at the switch." It also would seem to address Appellant's argument that defense counsel may have been hesitant to challenge the acting convening authority's son.

Further, Appellant has not made a showing of actual bias, nor argued that 1stLt Olson's familial relationship, in fact, influenced the panel's deliberations. First, 1stLt Olson stated on the record that he had not discussed

the case with his father and would not feel a need to explain any of the verdicts to his father.  Second, Appellant suggests that the senior enlisted members on Appellant's panel may have felt pressure to uphold the command's charging decision in light of 1stLt Olson's presence, but Appellant has not offered any persuasive evidence of actual bias.  Appellant is correct that disclaimers of bias, or the absence of actual bias, are not dispositive with regard to implied bias, which is viewed through the eyes of the public.  Nonetheless, a "member's unequivocal statement of a lack of bias can . . . carry weight" when considering the application of implied bias. United States v. Youngblood, 47 M.J. 338, 341 (C.A.A.F. 1997)(citations omitted).

## DECISION

Based on the totality of these circumstances, we hold that 1stLt Olson's service as president of Appellant's court-martial did not raise a significant question of legality, fairness, impartiality, to the public observer pursuant to the doctrine of implied bias.  Thus, given the circumstances present in this case, the military judge did not abuse his discretion by not exercising his authority to remove the member sua sponte.  Since the judge did not

abuse his discretion, there was no plain error.  The decision of the United States Navy-Marine Corps Court of Criminal Appeals is affirmed.