UNITED STATES, Appellant

v.

Jeremy J. NASH, Staff Sergeant
U.S. Marine Corps, Appellee

No. 11-5005/MC

Crim. App. No. 201000220

United States Court of Appeals for the Armed Forces

Argued February 14, 2012

Decided April 13, 2012

BAKER, C.J., delivered the opinion of the Court in which
ERDMANN, STUCKY, and RYAN, JJ., and EFFRON, S.J., joined.

<u>Counsel</u>

For Appellant:  Captain Mark V. Balfantz, USMC (argued); Brian
K. Keller, Esq. (on brief).

For Appellee:  Major Kirk Sripinyo, USMC (argued).

Military Judge:  John R. Ewers

**THIS OPINION IS SUBJECT TO REVISION BEFORE FINAL PUBLICATION.**

Chief Judge BAKER delivered the opinion of the Court.

In November 2009 the accused was tried by a general court-martial composed of officer and enlisted members. Contrary to his pleas, he was convicted of one specification each of taking indecent liberties with and committing an indecent act with MR, a child under the age of sixteen; four specifications of taking indecent liberties with LR, a child under the age of sixteen, and three specifications of committing indecent acts with LR; and one specification of knowingly and wrongfully possessing visual depictions of persons under the age of sixteen engaging in sexually explicit conduct to the prejudice of good order and discipline and of a nature to bring discredit upon the armed forces, all in violation of Article 134, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 934 (2006). The adjudged sentence included eighteen years of confinement, reduction in pay grade to E-1, and a dishonorable discharge. The convening authority approved the sentence as adjudged.

On review, the United States Navy-Marine Corps Court of Criminal Appeals (CCA) set aside the findings of guilty and the sentence and authorized a rehearing. United States v. Nash, No. NMCCA 201000220, 2011 CCA LEXIS 116, at *27, 2011 WL 2557630, at *9 (N-M. Ct. Crim. App. June 28, 2011).

The Judge Advocate General subsequently certified three issues to this Court:

I.

WHETHER THE NAVY-MARINE CORPS COURT OF CRIMINAL APPEALS ERRED IN REVIEWING THE IMPLIED BIAS ISSUE DE NOVO, RATHER THAN REVIEWING THE IMPLIED BIAS ISSUE UNDER THE STANDARD OF "LESS DEFERENCE THAN ABUSE OF DISCRETION BUT MORE DEFERENCE THAN DE NOVO" AS SET FORTH IN U.S. v. BAGSTAD, 68 M.J. 460 (C.A.A.F. 2010).

II.

WHETHER THE LOWER COURT FAILED TO APPLY THE IMPLIED BIAS TEST THAT ASKS WHETHER, CONSIDERED OBJECTIVELY, "MOST PEOPLE IN THE SAME POSITION WOULD BE PREJUDICED," REITERATED IN 2010 IN BAGSTAD, AND INSTEAD ERRONEOUSLY APPLIED A TEST ASKING WHETHER THE MEMBER'S CIRCUMSTANCES "DO INJURY TO THE PERCEPTION OR APPEARANCE OF FAIRNESS IN THE MILITARY JUSTICE SYSTEM?"

III.

WHETHER THE LOWER COURT ERRED IN REVERSING THE MILITARY JUDGE SETTING ASIDE THE FINDINGS AND SENTENCE FOR IMPLIED BIAS WHERE THE MEMBER SUBMITTED A WRITTEN REQUEST, WHICH WAS DENIED, THAT THE MILITARY JUDGE ASK A WITNESS "DO YOU THINK THAT PEDOPHILES CAN BE REHABILITATED?"

For the reasons set forth below, we conclude that the military judge abused his discretion by denying defense counsel's challenge of a court member on the basis of actual bias. Because we find actual bias, we need not reach certified issues one and two covering implied bias.

I. FACTS

Appellee was a Staff Sergeant (E-6) in the U.S. Marine Corps deployed to Okinawa, Japan. During his first tour in Okinawa, Appellee married MN, a Japanese national. The criminal

3

charges against Appellee arose from sexual misconduct that he engaged in with, and in the presence of MR, KR, and LR, the daughters of MN's sister AT.

From 2003 through 2006, Appellee engaged in a variety of sexual misconduct. LR testified that Appellee indecently touched her vaginal area twenty to twenty-five times, touched her breast region ten to fifteen times, showed her adult pornography once, and took nude photos of her. LR testified that she was about eight years old when the assaults began.

Additionally, MR testified that Appellee exposed himself to MR and her younger sister KR in a bedroom and committed indecent acts in front of them. At the time of this incident, MR was six years old and KR was four years old. During the same time period, Appellee engaged in an affair with AT, MN's sister.

Although it is unclear how the events unfolded, JR, AT's then-husband and the biological father of MR and KR, ultimately contacted the Naval Criminal Investigative Service (NCIS) in 2006 resulting in the investigation into Appellee's misconduct. When NCIS investigators went to Appellee's house, they found 580 child pornography images and seven child pornography videos on Appellee's computer.

During voir dire at Appellee's trial, the military judge instructed the members that "You must impartially hear the evidence, the instructions on the law. And only when you are in

your closed session deliberations, may you properly make a determination as to whether the accused is guilty or not guilty . . . ." The military judge instructed the members that they must make their determination of whether the accused is guilty solely upon the evidence and emphasized the fact that "it is of vital importance that [they] retain an open mind until all the evidence has been presented and the instructions have been given."

During the defense case on the merits, while MN was on the stand, one of the members, Master Gunnery Sergeant (MGySgt) S submitted a question to ask MN, "Do you think a pedophile can be rehabilitated?"[1] Both the trial counsel and defense counsel objected to the question. The question was not asked. The defense counsel requested that the military judge voir dire MGySgt S to determine whether he still maintained an open mind. The trial counsel did not want to individually question him; instead they requested a curative instruction to all members.

The military judge then reviewed the other questions asked by MGySgt S and concluded that the other questions he asked did not indicate any bias and that he had kept an open mind. The military judge then decided to voir dire the panel as a whole.

---

[1] Throughout the trial, MGySgt S submitted fifteen questions, including "Who determines what is high risk [--] the owner of the item or the shipping company?"; "What happens when you format a hard drive[?]"; "What were the men doing while the women were cooking?"; "Was Sgt Nash considered for a medal?"

The military judge stated to counsel that if he talked to MGySgt S alone, he might "chill the discussion in the deliberation room."  Once the members returned to the courtroom, the military judge stated "I told you at the outset of this trial that as court members you must keep open minds regarding the verdict until all the evidence is in and you've been instructed as to the law.  Everybody recall that instruction?"  The members responded affirmatively.  Then, the military judge asked, "Is there any member that believes they have been unable at this point to keep an open mind regarding the verdict?"  All members then responded in the negative.

At this time, the defense rested and the court recessed for the military judge to prepare jury instructions.  When the court-martial resumed, the military judge told the parties that he had reconsidered his ruling, and without further comment, stated his intent to individually question MGySgt S.  The Government objected and argued that MGySgt S would feel he did something wrong and feel compelled to vote not guilty.  The military judge overruled the objection and conducted voir dire:

> MJ:  Okay.  You also remember the instruction I gave you again just a few minutes ago, and that's to keep an open mind until all the evidence has been admitted and you've been instructed?
>
> MEM (MGySgt S):  Yes, sir.
>
> MJ:  You think you've managed to follow that?

6

MEM (MGySgt S):  Yes, sir. I think I have.

MJ:  Okay.  I also advised you in asking questions you should not depart from your impartial role as a trier of fact and ask questions biased to aid one side or the other.  Do you remember that instruction?

MEM (MGySgt S):  I believe so, sir.

MJ:  I got to ask you.  You wanted to ask [MN] a question, and the question was:  Do you think that pedophiles can be rehabilitated?

MEM (MGySgt S):  Yes, sir.  I went back and forth with that question in my head.  I wanted to get her opinion if she understood that frame of mind, I guess, if it is a frame of mind or if it's a disease or a learned thing.  I was just curious, sir, you know, I haven't made a judgment either way yet.

MJ:  And you just wanted to see if that would give you some insight into her credibility as a witness?  Is that a fair statement?

MEM (MGySgt S):  Yes, sir.  I guess you could say it's a fair statement.  I wanted to see -- well, not necessarily checking her intelligence level or anything.  I guess her naïveness or if she's -- because I know there's a lot of -- from my experience in Japan, they seem real timid or naïve maybe, easily embarrassed.

MJ:  So the question wasn't an indication that you had determined that Staff Sergeant Nash might be a pedophile, but to try to knock her out of her naïveté that you thought she might be experiencing?

MEM (MGySgt S):  Yes, sir.  I wasn't accusing Staff Sergeant Nash or trying to indicate that I made my decision already.  Just you know, I thought it was a tough question to ask.  That's why I went back and forth with it, you know, is the timing right for that type of question.

MJ:  We've heard a lot of evidence in this case to this point.  From both sides.  From the prosecution and the defense.  Do you feel like you've been able to

7

> keep an open mind throughout, listening to all the evidence?
>
> MGySgt S: Yes, sir.

Neither counsel posed further questions. The military judge then asked MGySgt S whether he felt this would affect his ability to deliberate freely with the other members, both of higher and lower rank.[2] MGySgt S stated that he felt "at ease with speaking [his] mind" and that he thought, "You can always learn better ideas from the junior guys . . . ."

After this exchange, defense counsel moved for MGySgt S to be removed for cause. Specifically, defense counsel argued that his voir dire answers did not make any sense. The defense counsel argued:

> The question to the witness whether or not she believes that a pedophile can be rehabilitated to test her level of naïvness, to test her timidness, it does not quite make sense, sir. It's not the type of question you would ask in this type of case just to see if a witness is timid or naïve, sir. And despite the allegation by the master guns that he had kept an open mind and can keep an open mind, I believe that it would appear that he has not, sir.

Trial counsel disagreed, saying that the military judge conducted a "very good voir dire." Trial counsel went on to argue that:

> I've really, in almost twenty years of experience, not heard a better response to difficult questions with somebody trying to explain to the military judge how

___

[2] The panel consisted of three enlisted members and three officers.

8

he's trying to do his absolute best to listen to all
the evidence, not be predisposed, to listen to the
instructions on the law from the military judge . . .
I think his responses were spot on.

And one of the things that . . . you have the ability
to do that, obviously, anybody in reviewing a written
record can't, is you can also assess whether the
master gunnery sergeant looked you in the eyes,
responded to your questions, his demeanor in providing
those responses.  And I think . . . [he] did his
absolute best to respond to your questions in an
honest and forthright manner.  And I think he
articulated pretty much what most serious, fair, and
just-minded jurors would do at this stage in the
proceeding when an individual is voir dired.

The military judge then denied the challenge for cause.  He

concluded:

While unusual, the question asked by Master Gunnery
Sergeant S was not far from the questions proffered by
trial counsel to probe the witness's [MN's] bias, as
it were, based on her statement to Special Agent
Rendon that she may have viewed the child pornography.
In essence, [the Government] argued that since [the
witness] didn't see anything wrong with child
pornography and that she may have viewed it to the
extent that that's reflected on her statement to
Special Agent Rendon, it is at least a logically
supported proposition that she -- her testimony may be
colored by a form of bias, that she didn't think
anything seriously wrong had gone on here.  Master
Gunnery Sergeant S['s] question, again was not far
from that.[3]

While that question may superficially indicate a
tendency to draw conclusions, and while we do require
members to keep an open mind, we all know as courtroom
observers that the evidence can sway from one side to

---

[3] Special Agent Rendon testified, by way of stipulation, that
during the search of Appellee's home, NCIS asked MN if they
could seize Appellee's home computer.  She agreed, however she
made a statement that NCIS must not search the computer for
child pornography, adding "what if I was looking at those?"

the other and to the extent that that did reflect a tendency to draw conclusions, it was not far from a member who comes [into] initial voir dire with problems with, say presumption of innocence and through the education aspect of voir dire, that individual is rehabilitated based on voir dire itself.

So to the extent there may have been any remaining implied bias or indication that Master Gunnery Sergeant S has not retained an open mind, I find that his answers were sincere and they reflected that, at this point in the trial, at a critical time, that is, just immediately before we argue the case, instruct the members and send them into the deliberation room, that he has an open mind. He may have the most open mind of any member based on the voir dire that we just went through with him at this point.

On appeal, the CCA reviewed whether the military judge erred when he denied the Appellee's challenge for cause of MGySgt S. Nash, 2011 CCA LEXIS 116, at *2-*3, 2011 WL 2557630, at *1. The CCA held that the military judge did err by failing to excuse MGySgt S after his question on the basis of implied bias. 2011 CCA LEXIS 116, at *26-*27, 2011 WL 2557630, at *9. As a result, the CCA set aside the findings and sentence and authorized a rehearing. 2011 CCA LEXIS 116, at *27, 2011 WL 2557630 at *9.

The CCA concluded, without further explanation, that the military judge did not abuse his discretion in ruling that MGySgt S was not actually biased. 2011 CCA LEXIS 116, at *17, 2011 WL 2557630, at *6. The CCA then went on to review implied bias and concluded that the military judge erred by not articulating any treatment of implied bias and its attendant

test on the record. 2011 CCA LEXIS 116, at *21-*23, 2011 WL 2557630, at *7-*8. As a result, citing the liberal grant mandate, the CCA reviewed the issue of implied bias de novo. 2011 CCA LEXIS 116, at *23, 2011 WL 2557630, at *7-*8.

The CCA noted that the individual voir dire of MGySgt S did nothing to dispel the concern that MGySgt S was biased because of "the leading nature of the military judge's questions, which then evinced very predictable answers and additionally problematic, non[ ]sequitur responses." 2011 CCA LEXIS 116, at *25, 2011 WL 2557630, at *8. Also, "aspects of his responses seemed predicated on an assumption that [Appellee] was a pedophile and his wife, [MN], was naïve in her assessment of pedophiles." Id. The CCA concluded that "it is clear . . . from the call of [MGySgt S's] question to [Appellee's] wife that he had already reached the conclusion that [Appellee] was guilty. When the court reviews a matter under implied bias, it is in fact appearances that carry the day." 2011 CCA LEXIS 116, at *26, 2011 WL 2557630, at *9. The CCA went on to conclude that:

> When MGySgt S's question to [MN] is "viewed through the eyes of the public, focusing on the appearance of fairness," the record reveals that MGySgt S had not maintained an open mind, but rather had prematurely and unfairly determined that [Appellee] was a pedophile, ergo, in some sense, guilty, prior to being instructed on the law by the military judge, and before deliberations had commenced.

11

<u>United States v. Nash</u>, No. 11-5005/MC

2011 CCA LEXIS 116, at *26, 2011 WL 2557630, at *9 (quoting <u>United States v. Strand</u>, 59 M.J. 455, 458 (C.A.A.F. 2004). Because MGySgt S had not maintained an open mind and could not follow jury instructions, the CCA concluded that MGySgt S was impliedly biased. 2011 CCA LEXIS 116, at *26-*27, 2011 WL 2557630, at *9. Finally, the CCA emphasized the fact that the military judge did not discuss the liberal grant mandate on the record making it unclear whether the military judge "deployed it as a judicial tool" further warranting the excusal of MGySgt S. 2011 CCA LEXIS 116, at *27, 2011 WL 2557630, at *9. The CCA then authorized a rehearing. <u>Id.</u>

## II. DISCUSSION

An accused enjoys the right to an impartial and unbiased panel. <u>United States v. Mack</u>, 41 M.J. 51, 54 (C.M.A. 1994). This right is provided in the military justice system by "the Constitution, federal statutes, regulations and directives, and case law." <u>United States v. Terry</u>, 64 M.J. 295, 301 (C.A.A.F. 2007).

"A military judge's determinations on the issue of member bias, actual or implied, are based on the 'totality of the circumstances particular to [a] case.'" <u>Terry</u>, 64 M.J. at 302 (quoting <u>Strand</u>, 59 M.J. at 456) (brackets in original). Actual bias and implied bias are "separate legal tests, not separate grounds for a challenge." <u>United States v. Armstrong</u>, 54 M.J.

12

51, 53 (C.A.A.F. 2000). More specifically, the right to an impartial and unbiased panel is upheld through military judges' determinations on the issues of actual bias, implied bias, and the mandatory disqualifying grounds in the Rules for Courts-Martial (R.C.M.) that preclude persons from serving on a panel. For instance, in the case of R.C.M. 912(f)(1)(M), which encompasses actual bias, a member must be excused when he or she "[h]as informed or expressed a definite opinion as to the guilt or innocence of the accused as to any offense charged."

Actual bias is personal bias which will not yield to the military judge's instructions and the evidence presented at trial. United States v. Reynolds, 23 M.J. 292, 294 (C.M.A. 1987). Appellate courts will review the military judge's ruling for abuse of discretion. Id. "Because a challenge based on actual bias involves judgments regarding credibility, and because 'the military judge has an opportunity to observe the demeanor of court members and assess their credibility during voir dire,' a military judge's ruling on actual bias is afforded great deference." United States v. Clay, 64 M.J. 274, 276 (C.A.A.F. 2007) (quoting United States v. Daulton, 45 M.J. 212, 217 (C.A.A.F. 1996)). "'Great deference' is not a separate standard." United States v. White, 36 M.J. 284, 287 (C.M.A. 1993). Rather, it is our recognition that the legal question of actual bias rests heavily on the sincerity of an individual's

statement that he or she can remain impartial, an issue approximating a factual question on which the military judge is given greater latitude of judgment.  See id.  The standard, however, remains an abuse of discretion.

Because we conclude that the military judge abused his discretion when he did not excuse MGySgt S for actual bias we need not reach the issue of implied bias in certified issues one and two.[4]  First, the Rules for Courts-Martial provide that military judges must remove any member who has formed or "expressed a definite opinion as to the guilt or innocence of the accused as to any offense charged."  R.C.M. 912(f)(1)(M).  MGySgt S's question, "Do you think a pedophile can be rehabilitated?," presents the issue of actual bias as it suggested that MGySgt S believed Appellee was a pedophile that committed the crimes he was charged with and that he might have believed pedophiles cannot be rehabilitated, and did so before the close of evidence.

---

[4] The issue of implied bias generally arises during the voir dire phase of a court-martial.  However, it is important to keep in consideration that, as in this case, the issue can arise at any time during the trial.  See R.C.M. 912(f)(2)(B) ("A challenge for cause may be made at any other time during trial when it becomes apparent that a ground for challenge may exist.  Such examination of the member and presentation of evidence as may be necessary may be made in order to resolve the matter.").  Therefore, it is incumbent upon military judges to tailor the application of the implied bias test to the context presented.

14

When the military judge asked MGySgt S about his motivation for asking the question, the colloquy that resulted was ineffectual. The military judge asked a series of leading questions which led to predictable answers but also some irrelevant and problematic responses. While MGySgt S answered affirmatively that he had kept an open mind throughout the presentation of evidence and stated that he had not "made a judgment either way," the plain language of his question indicates a conclusion as to Appellee's guilt and the subsequent voir dire did not otherwise dispel the possibility. To the contrary, the answers raised additional concerns regarding the member's views of a defense witness. The military judge found that while the question was "unusual" and "may superficially indicate a tendency to draw conclusions," the military judge concluded that MGySgt S was "sincere" and that "[he] may have the most open mind of any member . . . at this point."

While the military judge is in the best position to judge the demeanor of a member, in certain contexts mere declarations of impartiality, no matter how sincere, may not be sufficient. In this case, MGySgt S's stated rationale was inadequate to resolve the question of bias. The discussion did not relieve the concern that MGySgt S had made up his mind because he did not state a clear rationale for asking the question.

Second, the requirement for an impartial panel provides that all members follow the military judge's jury instructions. See Richardson v. Marsh, 481 U.S. 200, 206 (1987) (noting this is an "almost invariable assumption of law"); United States v. Washington, 57 M.J. 394, 403 (C.A.A.F. 2002) ("Juries are presumed to follow the instructions, until demonstrated otherwise." (citing United States v. Holt, 33 M.J. 400, 408 (C.M.A. 1991))). Before trial, the military judge asked the members, including MGySgt S, whether they would be able to keep an open mind and instructed them not to make any determination of guilt before all of the evidence had been presented. During trial, the military judge asked the same questions and instructed the jury again to keep an open mind and to not come to a decision before all of the evidence had been presented. However, MGySgt S's question demonstrated that he had not kept an open mind until the close of evidence and was therefore unable to follow the military judge's instructions. This demonstrates that MGySgt S's bias could not yield to the military judge's instructions and the military judge should have excused him from the panel.

### III. CONCLUSION

For the foregoing reasons, we conclude that the military judge abused his discretion when he did not excuse MGySgt S on the basis of actual bias. Because we find actual bias, we need

16

not reach the issue of implied bias as it is not determinative in the presence of actual bias.[5]  The decision of the United States Navy-Marine Corps Court of Criminal Appeals is affirmed.

---

[5] As a result, all outstanding motions are denied as moot.