# UNITED STATES ARMY COURT OF CRIMINAL APPEALS

Before
TOZZI, KRAUSS, and PENLAND
Appellate Military Judges

**UNITED STATES, Appellee**
**v.**
**Specialist JAMEL E. GREENE**
**United States Army, Appellant**

ARMY 20120805

Headquarters, United States Army Combined Arms Support Command,
Sustainment Center of Excellence, and Fort Lee
Denise R. Lind, Military Judge
Colonel Andrew J. Glass, Staff Judge Advocate

For Appellant:  William E. Cassara, Esq.; Captain Michael J. Millios, JA (on brief and reply brief).

For Appellee:  Colonel John P. Carrell, JA; Lieutenant Colonel James L. Varley, JA; Major Steven J. Collins, JA; Captain Benjamin W. Hogan, JA (on brief).

28 October 2014

----------------------------------
MEMORANDUM OPINION
----------------------------------

*This opinion is issued as an unpublished opinion and, as such, does not serve as precedent.*

PENLAND, Judge:

A panel of officer and enlisted members sitting as a general court-martial convicted appellant, contrary to his pleas, of carnal knowledge with a child who had attained the age of 12 but was under the age of 16 in violation of Article 120, Uniform Code of Military Justice [hereinafter UCMJ], 10 U.S.C. § 920 (2000 & Supp. V); aggravated sexual assault of a child, aggravated sexual assault by causing bodily harm, wrongful sexual contact in violation of Article 120, UCMJ, 10 U.S.C. § 920 (2006 & Supp. I); sodomy with a child under the age of 12, and forcible sodomy with a child who had attained the age of 12 but was under the age of 16 in violation of Article 125, UCMJ, 10 U.S.C. § 925 (2000).  The panel sentenced appellant to a dishonorable discharge, confinement for thirty-five years, forfeiture of all pay and allowances, and reduction to the grade of E-1.  The convening authority

approved only so much of the sentence as provided for a dishonorable discharge, confinement for 35 years, and reduction to the grade of E-1.

Appellant raises several assignments of error, three of which merit discussion and one of which merits relief.

## WRONGFUL SEXUAL CONTACT (Specification 4 of Charge II)

Specification 4 of Charge II alleged:

> In that [appellant], did, at or near Fort Story, Virginia, on divers occasions, between on or about 1 October 2007 and on or about 30 April 2009, wrongfully engage in sexual contact, to wit: touching the breasts and rubbing the vaginal area of Miss [DC], with, and without the permission of, Miss [DC].

During the charged time period between 1 October 2007 and 30 April 2009, DC was between fifteen years old and seventeen years old. After discussion with the parties, the military judge instructed the panel that "[a] person cannot consent to sexual activity as charged in Specification 4 of Charge II if that person is under 16 years of age."

Appellant argues the plain reading of the specification alleges conduct that is both lawful and unlawful—appellant engaging in sexual contact "with, and without the permission of" DC—and that the panel rendered an improper general verdict of guilt. *See generally Stromberg v. California*, 283 U.S. 359 (1931); *Yates v. United States*, 354 U.S. 298 (1957), *overruled on other grounds by Burks v. United States*, 437 U.S. 1 (1978). We disagree. Despite its circuitous grammatical construction, the specification plainly alleges that appellant wrongfully engaged in sexual contact with DC and that such contact was without her permission. The specification cannot reasonably be read to allege any lawful conduct.

A review of the military judge's instructions leaves us with no doubt that the panel convicted appellant of only unlawful conduct. The judge correctly instructed on all of the elements of the wrongful sexual contact offense, including the explanation that "'[w]ithout permission' means without consent." Coupled with the additional consent instruction regarding children under the age of 16, the judge left for the panel to decide that, if they believed any sexual contact occurred when DC was under 16, she was incapable of consenting; but, that if any sexual contact occurred after DC turned 16, they had to determine whether it was "without her permission" or without her consent. Absent evidence to the contrary, panel members are presumed to comply with the judge's instructions. *United States v. Hornback*, 73 M.J. 155, 161 (C.A.A.F. 2014).

**PANEL MEMBER'S QUESTIONS**

As part of its case-in-chief, the government presented evidence that on or about the charged time period pertaining to the offenses against DC, DC became pregnant, believed "it [was] most likely her uncle's," and obtained an abortion. During the defense's case, DC's boyfriend testified that he believed he was the father of the child because he and DC engaged in sexual intercourse during the same time period. Appellant also testified, *inter alia*, that prior to the charged time period, he had a vasectomy and a subsequent reversal procedure, and that he and his wife had been trying to become pregnant with no success for years.

The military judge handled panel members' proposed questions in accordance with Military Rule of Evidence 614(b), which requires members to submit their questions to the judge in writing "so that a ruling may be made on the propriety of the questions or the course of questioning and so that questions may be asked on behalf of the court by the military judge in a form acceptable to the military judge." The military judge carefully reviewed the dozens of questions submitted by various panel members and, despite lack of objection from either party to some questions, properly ruled that certain questions were objectionable and did not ask them.

Panel member, Captain (CPT) AA, proposed the following questions to appellant: "[w]hy should the court believe them and not you?," "[w]hy should the court believe you and not them?"[1], and "[d]on't you think it was an important part in your case to prove that you could not have physically impregnated [DC]?" Defense counsel objected to the questions without stating specific grounds, and the judge did not ask them. Defense counsel did not request an Article 39(a) session, an option indicated on the member's question form. Defense counsel did not object to the remaining seven questions CPT AA asked appellant.[2]

---

[1] The panel member was referring to the two alleged victims in this case.

[2] A different panel member later asked the following questions: "Have there been post-op visits to verify the success or failure of the vasectomy reversal? If so, what are the results of [the] post-op visits? Was the reversal successful?" Defense counsel did not object to these questions and the military judge asked the questions. Appellant responded that: he underwent a test, which indicated he had "some blockage"; he was referred to urology; he never went to urology once the allegations that were the subject of the trial arose; and that he "kn[e]w for a fact the vasectomy was not successful" because he and his wife had been trying to have a baby for years and were unable and his "wife [was] tested, and there [was] nothing wrong with her."

3

Appellant now argues that the military judge had a sua sponte duty "to examine CPT [AA], particularly after the question regarding the burden of proof, to determine whether she understood the instructions and would follow them" and that appellant "did not receive a fair trial because the military judge failed to excuse CPT [AA] sua sponte" on the grounds of both actual and implied bias.

The right to an impartial and unbiased panel is guaranteed to an accused in the military justice system by the Constitution, federal statutes, regulations and directives, and case law. *United States v. Nash*, 71 M.J. 83, 88 (C.A.A.F. 2012) (citations and quotation marks omitted). This right is "upheld through military judges' determinations on the issues of actual bias, implied bias, and the mandatory disqualifying grounds in the Rules for Courts-Martial (R.C.M.) that preclude persons from serving on a panel." *Id.*

Actual bias is "personal bias which will not yield to the military judge's instructions and the evidence presented at trial." *Id.* Actual bias is "reviewed through the eyes of the military judge or the court members . . . ." *United States v. Leonard*, 63 M.J. 398, 402 (C.A.A.F. 2006) (quoting *United States v. Wiesen*, 56 M.J. 172, 176 (C.A.A.F. 2001)). Implied bias exists when, "despite a disclaimer," most people in the same position as the panel member would be prejudiced against an accused. *United States v. Townsend*, 65 M.J. 460, 463 (C.A.A.F. 2008). Implied bias is evaluated "objectively, 'through the eyes of the public,' reviewing 'the perception or appearance of fairness of the military justice system.'" *Id.* (quoting *United States v. Schlamer*, 52 M.J. 80, 93 (C.A.A.F. 1999)). When there is no actual bias, implied bias should rarely be invoked. *United States v. Strand*, 59 M.J. 455, 458 (C.A.A.F. 2004) (citation and quotation marks omitted).

R.C.M. 912(f)(1) lists several grounds for excusing a member for cause. R.C.M. 912(f)(1)(M) provides that a member "shall be excused for cause whenever it appears that the member . . . [h]as formed or expressed a definite opinion as to the guilt or innocence of the accused as to any offense charged." This rule encompasses actual bias. *Nash*, 71 M.J. at 88. R.C.M. 912(f)(1)(N) provides that a member "shall be excused for cause whenever it appears that the member . . . [s]hould not sit as a member in the interest of having the court-martial free from substantial doubt as to legality, fairness, and impartiality." This rule applies to both actual and implied bias, however, "the thrust of this rule is implied bias." *Strand*, 59 M.J. at 458.

Finally, R.C.M. 912(f)(4) provides that: "Notwithstanding the absence of a challenge or waiver of a challenge by the parties, the military judge *may*, *in the interest of justice*, excuse a member against whom a challenge for cause would lie." (Emphasis added); *see also Strand*, 59 M.J. at 458 ("It is clear that a military judge may excuse a member sua sponte.").

The standard of review for a case under these facts is unclear. In *Strand*, our superior court stated that a "judge's decision whether or not to excuse a member sua sponte is subsequently reviewed for an abuse of discretion," but nonetheless held that "[s]ince the judge did not abuse his discretion, there was no plain error." 59 M.J. at 458, 460. Regardless of the standard, we hold the military judge did not abuse her discretion or commit error by not exercising her authority to remove CPT AA.

CPT AA's first two questions evidenced her concern with weighing appellant's credibility as a result of his decision to testify. By asking the third question, CPT AA was seeking additional evidence from appellant himself in order to assess his credibility. We recognize that the phrasing of the third question, suggesting that appellant needed to "prove" a fact, contravened the judge's initial instructions to the members that "[t]he government has the burden of proving the accused's guilt by legal and competent evidence beyond a reasonable doubt" and CPT AA's agreement during voir dire that "the burden never shifts to the defense to establish the accused's innocence . . . [and that] the defense has no obligation to present any evidence or to disprove the elements of the offenses." However, we hold that CPT AA's questions did not reflect that she had formed or expressed a definite opinion as to appellant's guilt or that she was personally biased against appellant.

Finding no actual bias or a violation of R.C.M. 912(f)(1)(M), we address whether CPT AA should have been excused for implied bias under R.C.M. 912(f)(1)(N). We review implied bias through the eyes of the public and ask whether CPT AA's question regarding paternity undermined the public's perception or appearance of fairness of the military justice system. *See Townsend*, 65 M.J. at 463. Based on the record before us, we answer in the negative.

The record merely suggests the possibility of implied bias when CPT AA asked a question in contravention of instructions provided earlier. Defense counsel's sole reaction at trial was to object to CPT AA's question. Defense counsel was satisfied when the judge did not ask the question and specifically did *not* request to voir dire or excuse CPT AA or for a curative instruction to be given to CPT AA. The military judge's instructions and actions further and appropriately reduced any potential implication of bias. The judge twice explained to the members that "questions of witnesses are subject to objection. During the trial, when I sustain an objection, disregard the question and the answer," and immediately before CPT AA proposed her three questions, the judge reminded the panel that "[o]nce again, if I did not ask your question, you can assume it's the subject of a sustained objection." After the judge did not ask CPT AA's paternity question, CPT AA did not seek to ask it again, evidencing her ability to follow the judge's instructions. Additionally, during the findings instructions, the judge again instructed the panel, *inter alia*, "the burden of proof to establish the guilt of the accused beyond a

reasonable doubt is on the government. The burden never shifts to the accused to establish his innocence or to disprove facts necessary to establish each element of each offense."

Implied bias is a long-recognized basis for concluding that a panel member should not serve on a court-martial. While the facts and circumstances surrounding the questions submitted by CPT AA present a close case, we are convinced upon review of the record as a whole and the applicable law, that the military judge did not commit error or abuse her discretion in refraining from conducting individual voir dire of CPT AA or excusing CPT AA.

## AGGRAVATED SEXUAL ASSAULT BY CAUSING BODILY HARM (SPECIFICATION 3 OF CHARGE II)

### *Facts and Procedural Background*

Specification 3 of Charge II alleged:

> In that [appellant], did, at or near Fort Story, Virginia, between on or about 22 November 2007 and on or about 30 April 2009, engage in a sexual act, to wit: penetrating with his penis the vulva of Miss [DC], by causing bodily harm upon her, to wit: placing his body weight on her so that Miss [DC] could not avoid the sexual contact.

Before issuing instructions on findings, the military judge gave both trial and defense counsel a written copy of the proposed instructions. With regard to Specification 3 of Charge II, the proposed instructions included the element: "that the accused did [cause DC to engage in a sexual act] by causing bodily harm to [DC], to wit: vaginal pain." Neither party objected to the proposed instruction, and the military judge instructed the panel accordingly.

The record reveals no evidence that any amendment was made to Specification 3 of Charge II to except the words, "placing his body weight on her so that Miss [DC] could not avoid the sexual contact," and substitute the words, "vaginal pain." However, we need not address the effect of this error because there is insufficient evidence in the record to convince us beyond a reasonable doubt that appellant placed his body weight on DC so that she could not avoid the sexual contact during the charged time period. *See United States v. Washington*, 57 M.J.

6

394, 399 (C.A.A.F. 2002).[3]  We conclude the evidence is factually insufficient to support appellant's conviction of Specification 3 of Charge II.

## CONCLUSION

The finding of guilty of Specification 3 of Charge II is set aside and dismissed.  The remaining findings of guilty are AFFIRMED.

In *United States v. Sales*, our superior court set forth the standard for sentence reassessment:  "if the [service] court can determine to its satisfaction that, absent any error, the sentence adjudged would have been of at least a certain severity, then a sentence of that severity or less will be free of the prejudicial effects of error . . . ."  22 M.J. 305, 308 (C.M.A. 1986).  After conducting a thorough analysis on the basis of the entire record and in accordance with the principles articulated in *United States v. Sales*, *id.*, and *United States v. Winckelmann*, 73 M.J. 11, 15-16 (C.A.A.F. 2013), we are confident in our ability to reassess appellant's sentence without the need for a rehearing.

In evaluating the *Winckelmann* factors, we find there is no dramatic change in the penalty landscape or significant decrease in sentencing exposure.  *See Winckelmann*, 73 M.J. at 15-16.  While a conviction for aggravated sexual assault by causing bodily harm carries a maximum sentence that includes 30 years confinement and a dishonorable discharge, two of appellant's remaining convictions (sodomy with a child under 12 and forcible sodomy) each subjected him to a maximum punishment of life without the possibility of parole and a dishonorable discharge. *Manual for Courts-Martial, United States* [hereinafter *MCM*] (2008 ed.), pt. IV, ¶¶ 45.f(2), 51.e(1), (3).  Appellant's convictions for carnal knowledge with a child who had attained the age of 12 but was under the age of 16, aggravated sexual assault of a child, and wrongful sexual contact subjected him to an additional 41 years of confinement.  *See MCM* (2005 ed.), pt. IV, ¶ 45.e(2); *MCM* (2008 ed.), pt. IV, ¶ 45.f(3), (7).  The gravamen of appellant's misconduct remains his serial sexual abuse of children—his wife's two nieces—while they were under his care. *See Winckelmann*, 73 M.J. at 16.  Finally, this court reviews the records of a substantial number of courts-martial involving sexual abuse of children and we have extensive experience with the level of sentences imposed for such offenses under various circumstances.  *See id.*

---

[3] Even if the specification had been amended to state appellant caused "vaginal pain," there is insufficient evidence in the record to establish that appellant caused vaginal pain during the charged time period.

GREENE — ARMY 20120805

After our review of the record, we are confident that the panel would have adjudged the same sentence absent the error noted. *See Sales*, 22 M.J. at 307-08. We also conclude, pursuant to Article 66, UCMJ, that such a sentence is also appropriate for the remaining guilty findings.

The sentence is AFFIRMED. All rights, privileges, and property, of which appellant has been deprived by virtue of that portion of the findings set aside by this decision, are ordered restored.

Senior Judge TOZZI and Judge KRAUSS concur.

FOR THE COURT:

MALCOLM H. SQUIRES, JR.
Clerk of Court