# UNITED STATES ARMY COURT OF CRIMINAL APPEALS

Before
BROOKHART, SCHASBERGER, and LEVIN
Appellate Military Judges

**UNITED STATES, Appellee**
v.
**Specialist NICHOLAS J. WRIGHT**
**United States Army, Appellant**

ARMY 20170486

Headquarters, Fort Campbell
Matthew A. Calarco and John Bergen, Military Judges
Colonel Andras M. Marton, Staff Judge Advocate

For Appellant: Lieutenant Colonel Tiffany D. Pond, JA; Major Todd W. Simpson, JA; Captain Zachary A. Gray, JA (on brief).

For Appellee: Colonel Steven P. Haight, JA; Lieutenant Colonel Wayne H. Williams, JA; Major Sandra L. Ahinga, JA (on brief).

9 August 2019

------------------------------------
MEMORANDUM OPINION
------------------------------------

*This opinion is issued as an unpublished opinion and, as such, does not serve as precedent.*

LEVIN, Judge:

An enlisted panel sitting as a general court-martial convicted appellant, contrary to his pleas, of two specifications of attempted abusive sexual contact, one specification of abusive sexual contact, and one specification of wrongful underage consumption of alcohol in violation of Tennessee law, in violation of Articles 80, 120, and 134, Uniform Code of Military Justice, 10 U.S.C. §§ 880, 920, and 934 [UCMJ]. The panel sentenced appellant to be discharged from the service with a bad-conduct discharge, to perform hard labor without confinement for twenty-one days, and to be reduced to the grade of E-1. The convening authority approved the findings and sentence as adjudged.

This case comes before us for review under Article 66, UCMJ. Appellant raises three assignments of error, one of which merits discussion and relief. Because we conclude the military judge abused his discretion when he denied the challenge

for cause against Lieutenant Colonel (LTC) CB for actual bias, we need not address the remaining assignments of error, nor the matters personally raised by appellant. For the reasons that follow, we set aside the findings and sentence and authorize a rehearing.

## BACKGROUND

During the preliminary voir dire of the members, the trial defense counsel asked the following question: "Do you think it's possible for a person to be mistaken as to whether somebody consents to sexual activity?" All of the panel members answered in the negative. In an effort to clarify the aforementioned question and the members' responses, and to follow-up on other matters raised during the general voir dire, the military judge and the parties conducted individual voir dire with all of the members, including the president of the panel, LTC CB.[1] The following colloquy occurred:

> MJ: So the question asked earlier was, 'Do you think that it is possible for a person to be mistaken as to whether someone consented to sexual activity?' If your answer to that is 'no,' then I don't think you can consider the defense. So, given what I've told you, do you think it is possible for a person to be mistaken as to whether someone consents to sexual activity?
>
> LTC CB: No.
>
> MJ: You don't think that's possible?
>
> LTC CB: No.
>
> MJ: Why not, sir?
>
> LTC CB: I think that there needs to be an agreement or a reply or some kind of acknowledgement of consent; a response for the person to verify that there is consent. If there's no response, then I don't think there is a mistake. If that makes sense, I guess.

---

[1] After the parties realized that they had neglected to clarify LTC CB's answer about the mistake of fact defense during his initial individual voir dire, LTC CB was recalled and asked specific questions about the potential defense.

MJ: So what you are saying is, you would look for evidence to determine whether or not something would have specifically led the accused to believe that the victim was consenting?

LTC CB: Yes, sir. I would say that if there's no response, then there's no consent. So if the victim [sic] thinks that the other person is consenting without a response, then I don't see how a normal person could make that judgment, right? There's no feedback. There's no mechanism for him to make a deliberate decision, so.

MJ: Is this assuming that somebody has already said no? Are you assuming that in your answer?

LTC CB: I guess I'm going to the point that if -- there has to be some acknowledgment of consent, I would think.

MJ: Does the acknowledgment have to be verbal or can it be by words and actions or by actions?

LTC CB: I think it could be both. But there has to be some kind of verbal or non-verbal signature or action.

MJ: Okay. So from what I am hearing then, if there was some evidence that there was some non-verbal action on the part of the alleged victims and the accused could have reasonably relied upon that non-verbal action to take that as a point of consent to go further, you would consider that in making your determinations?

LTC CB: I don't know. I guess I am relying that if there is consent, there has to be some kind of action or signature that would allow both people to acknowledge that, and if there's not, then I would say that there's not consent.

MJ: So if somebody, in some way -- if somebody did not respond by pushing somebody away or by saying no, at that -- then you could consider that as possibly leading to a mistaken belief as to consent?

LTC CB: Okay. Maybe.

The military judge then proceeded to read the entire mistake of fact instruction to LTC CB and continued his questioning:

> MJ:  I'm asking you, can you consider the possibility that someone might be mistaken as to consent and apply the instruction I just gave you.

After substantial hesitation, LTC CB responded, "Okay."[2] The military judge then asked, "You could do that?"  Again, LTC CB hesitated and eventually responded, "Yes."[3]

Trial defense counsel attempted to exercise a challenge for cause to remove LTC CB, based on both actual and implied bias, because LTC CB had articulated a "standard that has come to be known in some circles as affirmative consent, where he wanted an affirmative expression of consent from the accuser in order to establish the consent existed.  He continually used the term 'signature.'  A signature action, in order to manifest consent."  Trial counsel objected, and the military judge denied the challenge for cause, stating:

> MJ:  . . . I'm judging my ruling based upon both opportunities that [LTC CB] had to face me on individual voir dire and I believe he was very candid in his responses.  I don't think he should be punished for being candid.  I think that once read [sic] the instruction, he did, in fact, raise his hand before I even finished the instruction, indicating that he understood now that it's an instruction that he has to follow.  I specifically remember him doing that, raising his hand before I even finished, you know, that he would yes in the affirmative, follow that instruction, and that he affirmatively does believe that there is a possibility of mistake.[4]

---

[2] Trial defense counsel described the hesitation on the record.  That description was not rebutted.

[3] *See* n.3.

[4] The record is silent as to the basis for the military judge's interpretation of LTC CB's raised hand.  Moreover, this interpretation appears to be at odds with the substantial hesitation between the military judge's last two questions and LTC CB's answers.

## LAW AND DISCUSSION

An accused enjoys the right to an impartial and unbiased panel. *United States v. Mack*, 41 M.J. 51, 54 (C.M.A. 1994). This right is provided in the military justice system by "the Constitution, federal statutes, regulations and directives, and case law." *United States v. Terry*, 64 M.J. 295, 301 (C.A.A. F. 2007) (citations omitted). Impartial court-members "are a *sine qua non* for a fair court-martial." *United States v. Wiesen*, 56 M.J. 712, 174 (C.A.A.F. 2001) (citation omitted). "A military judge's determinations on the issue of member bias, actual or implied, are based on the 'totality of the circumstances particular to [a] case.'" *Id.* at 302 (quoting *United States v. Strand*, 59 M.J. 455, 456 (C.A.A.F. 2004)) (brackets in original).

Actual bias and implied bias are "separate legal tests, not separate grounds for a challenge." *United States v. Armstrong*, 54 M.J. 51, 53 (C.A.A.F. 2000) (citations omitted). More specifically, the right to an impartial and unbiased panel is upheld through military judges' determinations on the issues of actual bias, implied bias, and the mandatory disqualifying grounds in the Rules for Courts–Martial (R.C.M.) that preclude persons from serving on a panel. *United States v. Nash*, 71 M.J. 83, 88 (C.A.A.F. 2012).

Actual bias is personal bias which will not yield to the military judge's instructions and the evidence presented at trial. *United States v. Reynolds*, 23 M.J. 292, 294 (C.M.A. 1987). "Because a challenge based on actual bias involves judgments regarding credibility, and because 'the military judge has an opportunity to observe the demeanor of court members and assess their credibility during voir dire,' a military judge's ruling on actual bias is afforded great deference." *United States v. Clay*, 64 M.J. 274, 276 (C.A.A.F. 2007) (quoting *United States v. Daulton*, 45 M.J. 212, 217 (C.A.A.F. 1996)). "'Great deference' is not a separate standard." *United States v. White*, 36 M.J. 284, 287 (C.M.A. 1993). Rather, it is the recognition that the legal question of actual bias rests heavily on the sincerity of an individual's statement that he or she can remain impartial, an issue approximating a factual question on which the military judge is given greater latitude of judgment. *Nash*, 71 M.J. at 88-89. The standard, however, remains an abuse of discretion. *United States v. Woods*, 74 M.J. 238, 243 (C.A.A.F. 2015)

On six occasions, LTC CB was asked about the mistake of fact defense. The trial defense counsel asked him once if a person could be mistaken as to whether someone consents to sexual activity, and the military judge asked him twice. On all three occasions, even after the military judge advised him that his answer meant that LTC CB could not "consider the defense," LTC CB answered in the negative. On the fourth occasion, when provided with an example of a mistake of fact defense, LTC CB indicated that "maybe" he could consider it.

The colloquy that resulted after the military judge read the mistake of fact instruction was ineffectual. In response to hearing the instruction and being asked a fifth time if he could consider the defense, LTC CB, after substantial hesitation, answered "okay." Finally, and only after being asked a leading question ("you could do that?"), did LTC CB provide the predictable answer ("yes"), once again after some hesitation.

While the military judge is in the best position to judge the demeanor of a member, in certain contexts a mere declaration of a willingness to follow the instructions may not be sufficient. *See Nash*, 71 M.J. at 89. This is such a case. Here, the discussion that followed LTC CB's negative responses did not relieve the concern that LTC CB required some sort of affirmative expression of consent. His substantial hesitation before answering "okay" and then a begrudging "yes" to a leading question were inadequate to resolve the question of his personal bias. Consequently, the military judge abused his discretion when he denied trial defense counsel's challenge for cause.

Because we find actual bias, we need not determine whether there was implied bias that would have also warranted LTC CB's excusal.

## CONCLUSION

The findings and sentence are SET ASIDE and a rehearing is authorized.

Judge SCHASBERGER concurs.

Judge BROOKHART, concurring in result:

I concur in result, however, I would have found implied bias rather than actual bias. In ruling on actual bias, the trial judge articulated his thought process on the record. He did so by highlighting the significance of his first-hand observations to that ruling. The considered process observed by the military judge is entitled to great deference from this Court in recognition of his superior perspective on critical matters such as sincerity, tone, and demeanor which do not readily translate to the written record. *United States v. Clay*, 64 M.J. 274, 276-77 (C.A.A.F. 2007); *see also, United States v. Terry*, 64 M.J. 295, 302 (C.A.A.F. 2007); *United States v. Daulton*, 45 M.J. 212, 217 (C.A.A.F. 1996). Honoring that deference, I do not find sufficient evidence to conclude that the military judge clearly abused his discretion in finding no actual bias.

Implied bias, on the other hand, stems from "historic concerns about the real and perceived potential for command influence" in courts-martial. *United States v. Peters*, 74 M.J. 31, 34 (C.A.A.F. 2015) (quoting *Clay*, 64 M.J. at 277). In analyzing implied bias, the key question is whether "the risk that the public will perceive that

the accused received something less than a court of fair, impartial members is too high." *United States v. Woods*, 74 M.J. 238, 243-44 (C.A.A.F. 2015) (citation omitted). Accordingly, in the military context, the test for implied bias is "one of public perception." *Id.* at 243.

Implied bias is reviewed on the basis of a "totality of the circumstances." *United States v. Rogers*, 75 M.J. 270, 273 (C.A.A.F. 2016) (citation omitted). It "exists when, regardless of an individual member's disclaimer of bias, 'most people in the same position would be prejudiced [*i.e.*, biased]'". *United States v. Strand*, 59 M.J. 455, 459 (C.A.A.F. 2004). Moreover, "while it will often be possible to 'rehabilitate' a member on a possible question of actual bias, questions regarding the appearance of fairness may nonetheless remain." *Woods*, 74 M.J. at 243. Finally, the liberal grant mandate obligates military judges "to err on the side of granting a challenge" where the issue of implied bias results in a close call. *Peters*, 74 M.J. at 34.

In this case, while the military judge satisfied his concerns regarding LTC CB's actual bias, I am not convinced that under a totality of the circumstances the public would be equally satisfied that the trial was fair. Accordingly, I find that it was a clear abuse of discretion not to grant this challenge for implied bias under the liberal grant mandate.

FOR THE COURT:

MALCOLM H. SQUIRES, JR.
Clerk of Court