# UNITED STATES AIR FORCE COURT OF CRIMINAL APPEALS

**UNITED STATES**

**v.**

**Senior Airman BRETT R. MORGAN**
**United States Air Force**

**ACM 38591**

**30 October 2015**

Sentence adjudged 22 November 2013 by GCM convened at Joint Base McGuire-Dix-Lakehurst, New Jersey. Military Judge: Mark L. Allred.

Approved Sentence: Dishonorable discharge, confinement for 5 years, total forfeiture of pay and allowances, and reduction to E-1.

Appellate Counsel for the Appellant: Captain Jonathan D. Legg and James S. Trieschmann, Jr. (civilian counsel).

Appellate Counsel for the United States: Captain Richard J. Schrider and Gerald R. Bruce, Esquire.

Before

MITCHELL, TELLER, and BROWN
Appellate Military Judges

OPINION OF THE COURT

This opinion is issued as an unpublished opinion and, as such, does not serve as precedent under AFCCA Rule of Practice and Procedure 18.4.

TELLER, Senior Judge:

Appellant was convicted, contrary to his pleas, by a panel of officer members of two charges of sexual assault, one charge of assault and battery, and one charge of dereliction of duty by providing alcohol to a minor in violation of Articles 120, 128, and 92, UCMJ, 10 U.S.C. §§ 920, 928, 892.[1] The court sentenced him to reduction to E-1,

---

[1] Appellant was acquitted of one specification of rape.

total forfeitures, 5 years of confinement, and a dishonorable discharge. The sentence was approved, as adjudged, on 1 April 2014.

Appellant argues that: (1) the military judge erred by admitting certain propensity evidence under Mil. R. Evid. 413; (2) the military judge erred by taking judicial notice of certain regulatory provisions related to alcoholic beverages; (3) the dereliction of duty specification was defective because it failed to allege a location establishing a duty; (4) the evidence as to each charge was factually insufficient and, as to the charges of sexual assault and dereliction of duty, was also legally insufficient; (5) he was denied his right under the Sixth Amendment[2] to effective assistance of counsel when counsel failed to conduct sufficient voir dire of one member and failed to call two witnesses; (6) the military judge erred by failing to grant a challenge for cause; and (7) prosecutors engaged in misconduct by failing to pursue alleged offenses by a prosecution witness.[3] Finding no error that materially prejudices a substantial right of Appellant, we affirm the findings and sentence.

*Background*

Over the course of Appellant's first four years in the Air Force, he was engaged in multiple tumultuous relationships, three of which resulted in charges in this case. In 2009, about a year after joining the Air Force, Appellant married KM, a woman from his hometown. KM served on active duty for a short period of time but was medically retired due to issues with her hips that developed during initial training. After her retirement, she joined Appellant at his first duty station. Their relationship deteriorated over the next two years, including one period of time where KM made allegations of sexual abuse that she recanted after Appellant offered an apology. Appellant was the dominant personality in the relationship, exerting control by exploiting KM's inability to drive, manipulating her family, taking advantage of her views towards marriage, and controlling the couple's finances. The two ultimately divorced in 2012. After the divorce, KM became aware of allegations Appellant had sexually assaulted his new girlfriend, and when contacted by law enforcement she reasserted her claims of sexual abuse during the marriage.

Almost immediately after the divorce, in March 2012, Appellant began a new relationship with a similar power dynamic. Appellant had reconnected with AG, another woman from his hometown, over Facebook. She was living in Arizona but was unhappy there due to her own relationship problems. Appellant bought her a one-way bus ticket so she could come live with him in New Jersey. While the two experienced a few happy weeks together initially, that relationship too began to sour. Appellant's controlling behavior reasserted itself, restricting AG through her lack of transportation, limiting her financial resources, and persistently demanding updates as to where she was and whom

---

[2] U.S. CONST. amend VI.

[3] The final three issues are raised pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A. 1982).

she was with. While AG became pregnant during this time, the relationship was ultimately short lived. The evidence indicates Appellant became physically abusive, punching holes in the apartment walls, and on one occasion pushing AG against the wall; for these actions Appellant was convicted of assault consummated by a battery. AG began looking for an opportunity to leave. AG eventually terminated the relationship in June 2012 during a visit from New Jersey back to Texas. AG later contacted law enforcement to report the abuse. In addition to the assault, she alleged that Appellant raped her the evening before she left for Texas and had, on multiple occasions, engaged in sexual contact with her while she was intoxicated or asleep. Appellant was charged with one sexual offense against AG based upon the rape allegation and was acquitted of that offense.

Appellant met the last victim of the charged offenses, JC, through a website. JC was 19 at the time she met Appellant and still lived at home with her mother. Appellant and JC never lived together, but they developed a sexual relationship. Over the month of time they were together, Appellant would buy beer for JC from time to time. On the night before Thanksgiving, 2012, JC became intoxicated but agreed to go back to Appellant's residence. While JC did not recall how she got there, she did recall briefly awakening to Appellant having sex with her. She described being alert for only about two seconds but long enough to realize Appellant was having vaginal sex with her. The next day, she experienced unexplained pain and anal bleeding and asked Appellant whether they had anal sex the night before. Appellant told her they had not, but JC remained skeptical. JC ended the sexual relationship with Appellant a few days later. One or two weeks after the incident, in the course of a longer discussion about Appellant, JC disclosed to a mutual acquaintance of KM and AG that she had woken up to Appellant having sex with her. She was ultimately contacted by law enforcement after AG filed her complaint.

Additional facts necessary to resolve the assigned errors are included below.

*Uncharged Misconduct*

Appellant asserts that the military judge erred by admitting certain evidence of uncharged misconduct concerning KM under Mil. R. Evid. 413. In addition to the evidence of the charged offenses, the Government sought to introduce evidence under Mil. R. Evid. 413 of a separate instance of rape of KM and evidence that he touched KM's vagina while she was asleep. Appellant filed a timely motion in limine objecting to the admission of the evidence. After a hearing, the military judge denied the defense motion. The military judge set out his analysis in a written ruling.

We review a military judge's decision to admit evidence for an abuse of discretion. *United States v. Solomon*, 72 M.J. 176, 179 (C.A.A.F. 2013). "The abuse of discretion standard is a strict one, calling for more than a mere difference of opinion. The challenged action must be arbitrary, fanciful, clearly unreasonable, or clearly erroneous."

*Id.* quoting *United States v. White*, 69 M.J. 236, 239 (C.A.A.F. 2010)) (internal quotation marks omitted).

Mil. R. Evid. 413(a) allows evidence of an uncharged sexual assault to be admitted and "be considered on any matter to which it is relevant." This includes demonstrating an accused's propensity to commit the charged offenses. *United States v. Parker*, 59 M.J. 195, 198 (C.A.A.F. 2003); *United States v. Wright*, 53 M.J. 476, 480 (C.A.A.F. 2000). Our superior court has noted that "inherent in [Mil. R. Evid.] 413 is a general presumption in favor of admission." *United States v. Berry*, 61 M.J. 91, 94–95 (C.A.A.F. 2005). Certain procedural safeguards are required in order to protect the accused from an unconstitutional application of Mil. R. Evid. 413. *United States v. Schroder*, 65 M.J. 49, 55 (C.A.A.F. 2007). This includes the requirement that the military judge make "threshold findings" that (1) the accused is charged with sexual assault, (2) the proffered evidence is evidence of his commission of another offense of sexual assault, and (3) the evidence is relevant under Mil. R. Evid. 401 and 402. *Id.*; *United States v. Solomon*, 72 M.J. 176, 179 (C.A.A.F. 2013).

Once these threshold findings are made, the military judge is constitutionally required to apply a balancing test under Mil. R. Evid. 403. *Berry*, 61 M.J. at 95. Mil. R. Evid. 403 provides that "[t]he military judge may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the members, undue delay, wasting time, or needlessly presenting cumulative evidence." In conducting the balancing test for Mil. R. Evid. 413 evidence, the military judge should consider the following non-exhaustive *Wright* factors to determine whether the evidence's probative value is substantially outweighed by the danger of unfair prejudice: strength of proof of the prior act, probative weight of the evidence, potential for less prejudicial evidence, distraction of the factfinder, time needed for proof of the prior conduct, temporal proximity, frequency of the acts, presence or lack of intervening circumstances, and the relationship between the parties. *Id.*

Appellant first argues that this court should give little or no deference to the military judge's Mil. R. Evid. 413 and 403 rulings because he "failed to make sufficient findings on the record and he failed to engage in any true application of the law to the facts." We disagree. Appellant relies upon the military judge's more detailed explanation of several of the *Wright* factors to suggest that he failed to consider the other factors. We find that argument unpersuasive. In this case, the military judge's written ruling accurately articulated the Mil. R. Evid. 413 test, the Mil. R. Evid. 403 balancing required, and the *Wright* factors to be applied in conducting that balancing test. The military judge found "the *Wright* factors weigh strongly in favor of admissibility." The record simply does not support the assertion that the military judge failed to apply the law to the facts. His ruling, although it did not discuss every *Wright* factor in detail, shows that he considered those factors in conducting his Mil. R. Evid. 403 balancing test.

Accordingly, we will overturn his ruling only if there is a clear abuse of discretion. *United States v. Manns*, 54 M.J. 164, 166 (C.A.A.F. 2000). We find no such abuse of discretion here. The military judge's findings of fact were supported by at least some evidence in the record, and he applied the appropriate law. We decline Appellant's suggestion that we should engage in our own balancing test or overturn a decision by the military judge that was within his reasonable discretion.

*Judicial Notice*

Appellant asserts that the military judge erred by taking judicial notice of certain provisions of Air Force Instruction (AFI) 34-219, *Alcoholic Beverage Program* (17 October 2007), and AFI 1-1, *Air Force Standards* (7 August 2012) as it related to the charge of willful dereliction of duty under Article 92(3), UCMJ, by providing alcohol to a minor. Specifically, he contends that the military judge erred in "determining that the referenced regulations were applicable to appellant's alleged misconduct." We review a military judge's decision whether to take judicial notice for an abuse of discretion. *United States v. Lutes*, 72 M.J. 530, 533 (A.F. Ct. Crim. App. 2013).

A military judge may take judicial notice of both adjudicative facts and law. Mil. R. Evid. 201 provides both the substantive and procedural requirements for taking judicial notice of an adjudicative fact. Mil. R. Evid. 202 provides the substantive and procedural requirements for taking judicial notice of law. Notably, Mil. R. Evid. 202(a) provides that "[i]f a domestic law is a fact that is of consequence to the determination of the action, the procedural requirements of Mil. R. Evid. 201 [except as it pertains to instructions to members] apply." A regulation is a proper subject of judicial notice. *United States v. Ayers*, 54 M.J. 85, 90 (C.A.A.F. 2000).

Article 92(3), UCMJ, requires the existence of a duty. The *Manual* states that the "duty may be imposed by treaty, statute, regulation, lawful order, standard operating procedure, or custom of the service." *Manual for Courts-Martial, United States* (*MCM*), pt. IV, ¶ 16.c.(3)(a) (2012 ed.).

In this case, the military judge took judicial notice of portions of two AFIs and two provisions of state law. At the direction of the military judge, the trial counsel prepared Prosecution Exhibit 6, an excerpt of the regulations and statutes of which the Government sought judicial notice. The preface in Exhibit 6 stated, among other things, that the members were "permitted to recognize and consider the following laws without further proof." The exhibit went on to recount four different provisions. First, it included paragraph 2.7 of AFI 1-1: "State and foreign country drinking age laws, including those in a deployed environment, must be obeyed both on and off-duty." Second, it set out four sections of AFI 34-219 that specifically pertained to use and distribution of alcoholic beverages on Air Force installations. Third, it listed section (a) of New Jersey Statute 2C:33-17, dated 1995:

Anyone who purposely or knowingly offers or serves or makes available an alcoholic beverage to a person under the legal age for consuming alcoholic beverages or entices or encourages that person to drink an alcoholic beverage is a disorderly person.

Finally, it recounted section (b) of New Jersey Statute 9:17B-1, dated April 13, 1983:

Extend to persons 21 years of age and older the right to purchase and consume alcoholic beverages on January 1, 1983, provided that anyone attaining the age to purchase and consume alcoholic beverages legally prior to January 1, 1983, shall retain that right.

In his instructions prior to deliberations on findings, the military judge instructed the members, "As indicated to you earlier, I have taken judicial notice of the instructions and law set forth in Prosecution Exhibit 6. This means that you are permitted to recognize and consider these matters without further proof."

Appellant now argues that the military judge erred when taking judicial notice by determining that the referenced regulations were relevant. We disagree. The *Manual* explicitly indicates that regulations may establish a military duty. Both regulations pertained to an Airman's duty to obey drinking age laws and therefore may reasonably be considered to be relevant. His instructions clearly allowed the members to "recognize and consider" those provisions, but left it to them to decide whether those provisions established a military duty and whether Appellant's conduct was a willful breach of that duty. The military judge did not abuse his discretion in taking judicial notice of these relevant instructions and related state law.

*Location Alleged for Dereliction of Duty*

Appellant extends his argument above to the Specification of Second Additional Charge I, asserting that failure to allege that Appellant provided alcohol to a minor while on an Air Force installation rendered the specification defective. We note that this issue was not raised at trial. When an issue is forfeited by failure to raise it during the trial,[4] it is subject only to plain error review. *United States v. Harcrow*, 66 M.J. 154, 156 (C.A.A.F. 2008). Under a plain error analysis, the appellant must demonstrate that "(1) there was error; (2) the error was plain and obvious; and (3) the error materially prejudiced a substantial right of the [appellant]." *United States v. Clifton*, 71 M.J. 489, 491 (C.A.A.F. 2013) (citing *United States v. Powell*, 49 M.J. 460, 464–65 (C.A.A.F.

---

[4] In the absence of any evidence that Appellant knowingly declined to assert this claim at trial, we consider it forfeited and not waived.

1998)).  The appellant bears the burden of establishing plain error.  *United States v. Hardison*, 64 M.J. 279, 281 (C.A.A.F. 2007).

We are not persuaded that the specification constituted error.  We find, as discussed below, that the evidence was legally sufficient to sustain Second Additional Charge I on the basis of AFI 1-1 alone.  AFI 1-1 has no geographic limitation.  As such, we are not convinced the Government was required to allege that the misconduct occurred on an installation.

*Factual and Legal Sufficiency*

Appellant argues that the evidence as to all of the charges of which he was convicted was factually insufficient and, as to the charges of sexual assault and dereliction of duty, was also legally insufficient.  In accordance with Article 66(c), UCMJ, 10 U.S.C. § 866(c), we review issues of legal and factual sufficiency de novo.  *United States v. Washington*, 57 M.J. 394, 399 (C.A.A.F. 2002).

The test for legal sufficiency of the evidence is "whether, considering the evidence in the light most favorable to the prosecution, a reasonable factfinder could have found all the essential elements beyond a reasonable doubt."  *United States v. Humpherys*, 57 M.J. 83, 94 (C.A.A.F. 2002) (quoting *United States v. Turner*, 25 M.J. 324, 234 (C.M.A. 1987)) (internal quotation marks omitted).  In resolving questions of legal sufficiency, "we are bound to draw every reasonable inference from the evidence of record in favor of the prosecution."  *United States v. Barner*, 56 M.J. 131, 134 (C.A.A.F. 2001).

The test for factual sufficiency is "whether, after weighing the evidence in the record of trial and making allowances for not having personally observed the witnesses, [we are] convinced of the [appellant]'s guilt beyond a reasonable doubt."  *Turner*, 25 M.J. at 325 (C.M.A. 1987), *quoted in United States v. Reed,* 54 M.J. 37, 41 (C.A.A.F. 2000).  In conducting this unique appellate role, we take "a fresh, impartial look at the evidence," applying "neither a presumption of innocence nor a presumption of guilt" to "make [our] own independent determination as to whether the evidence constitutes proof of each required element beyond a reasonable doubt."  *Washington,* 57 M.J. at 399.

The term reasonable doubt does not mean that the evidence must be free from conflict.  *United States v. Lips,* 22 M.J. 679, 684 (A.F.C.M.R. 1986).  Our assessment of legal and factual sufficiency is limited to the evidence produced at trial.  *United States v. Dykes*, 38 M.J. 270, 272 (C.M.A. 1993).

*1.  Assault Consummated by a Battery of AG*

Appellant argues the evidence was factually insufficient to sustain his conviction of assault against AG.  The primary evidence to support the allegation came from AG, who provided testimony sufficient to establish each element of the offense.  Viewing her

7

testimony in the light most favorable to the prosecution, as we must for legal sufficiency purposes, we find a reasonable factfinder could have found Appellant guilty on the basis of her testimony alone. Appellant argues that AG was not credible because she had previously been untruthful, her behavior immediately after the assault was inconsistent with her description of the incident, and her testimony conflicted with the testimony of other witnesses. We place little weight on AG's previous allegedly false testimony as a 10-year-old in a hearing relating to a custody dispute between her parents. We are also not persuaded that AG's behavior was inconsistent with her allegations of assault. Although she testified that the assault was sufficient to leave red marks on her arms, we are not persuaded that such incidents were so far beyond AG's experiences that it would have had a prolonged traumatic effect on her. We do not find it unbelievable that, some time after the assault, she would have recovered enough to joke around with the friends who came to pick her up. Finally, we do not believe that the inconsistencies highlighted by Appellant are so significant that they render AG's account of the assault unworthy of belief. After weighing the evidence ourselves, and making allowances for not having observed the witnesses, we are convinced beyond a reasonable doubt that Appellant was guilty of the assault alleged.

*2. Sexual Assault of KM*

Appellant further argues that the evidence supporting his conviction of sexual assault of KM was legally and factually insufficient. The specification alleged that Appellant on divers occasions between on or about 1 June 2009 and on or about 30 June 2009, engaged in sexual intercourse with KM, when she was substantially incapable of appraising the nature of the sexual act. KM's testimony was sufficient to establish that Appellant, on more than one occasion during the alleged timeframe, initiated sexual intercourse with KM while she was asleep. Appellant asserts that KM is not worthy of belief, and even if she were, he established the affirmative defenses of marriage and mistake of fact as to consent.

It is an affirmative defense to the charge that the accused and KM were legally married to each other when he initiated intercourse, even if she was asleep.[5] *See* Article 120(q)(1), UCMJ (2008). The affirmative defense of marriage does not exist if at the time Appellant initiated intercourse he had the subjective intent to abuse, humiliate, or degrade KM. *See* Article 120(q)(1), UCMJ (2008). The intent need not be exclusive or of any particular weight. *See United States v. Kearns*, 73 M.J. 177, 182 (C.A.A.F. 2014) (holding that the intent element of transportation of minor offense is met as long as the illegal sexual activity is "a purpose" of the transportation across state lines, and not merely incidental to the travel) .

---

[5] Because the offenses occurred in June 2009, the version of Article 120, UCMJ, 10 U.S.C. § 920, in Appendix 28 applies. *Manual for Courts-Martial, United States*, app. 28 (2012 ed.).

We first address the question of whether, without considering the potential defenses, the evidence was legally and factually sufficient. If we were to credit KM's entire testimony, as we would in taking the evidence in the light most favorable to the prosecution, we find a reasonable factfinder could have found Appellant guilty. KM testified that she woke up about ten times to Appellant either having sex with her or penetrating her vagina with his fingers. She estimated that four or five of those occasions consisted of digital penetration. She also testified that she told him on those occasions that his conduct was "not okay." She testified that she told her sister and her mother about the abuse, and they both testified consistently with that assertion. After weighing the evidence ourselves, and making allowances for not having observed the witnesses, we are convinced beyond a reasonable doubt that, on more than one occasion during the charged timeframe, Appellant initiated sexual intercourse with KM while she was asleep.

We next consider the affirmative defense of mistake of fact as to consent. In light of KM's testimony that she explicitly told Appellant that she did not want him initiating sexual intercourse while she was asleep, we find that a reasonable panel member could find beyond a reasonable doubt that any mistake Appellant had as to consent was unreasonable. Appellant asserts "[w]hile she may have, in her head, articulated that she did not want the accused to have sex with her that first time, [KM] was in a position (having at some point appraised the nature of the sexual act with clarity) to manifest lack of consent, but she did not." That assertion is not supported by the record. KM testified that she did object. Although cross-examination established potential inability to accurately perceive and recall the events based on the effects of her medication, there was never any evidence suggesting she was mistaken in her belief that she verbally objected. Our assessment of legal and factual sufficiency is limited to the evidence produced at trial. *Dykes*, 38 M.J. at 272. We ourselves considered the testimony of KM that she voiced her objection after the first incident, in addition to the testimony suggesting Appellant knew the pain it caused when the couple had sex with his weight resting on her hips due to her medical condition, and also conclude beyond a reasonable doubt that any mistake Appellant might have had would have been unreasonable.

Finally, we consider whether the evidence was sufficient to disprove the defense of marriage. KM testified that Appellant engaged in a wide variety of behaviors designed to exert control over her life, such as limiting contact with her family and controlling the couple's finances including her disability compensation. These behaviors, in conjunction with disregarding her initial objections to his initiating sexual intercourse while she was asleep, are substantial circumstantial evidence. The evidence indicates that, in addition to whatever intent he may have had to gratify his own sexual desires, he also had the intent to repeatedly initiate sexual intercourse with her while she was asleep, over her previous objections, which was by its nature abusive. We find this circumstantial evidence legally sufficient to permit a reasonable panel member to find beyond a reasonable doubt that Appellant's intent to abuse, humiliate, or degrade KM negated the defense of marriage. We ourselves, after weighing the evidence and making allowances for not having

observed the witnesses, are convinced beyond a reasonable doubt that Appellant intended to abuse KM.

We are convinced that the evidence, when viewed in the light most favorable to the prosecution, would allow a reasonable factfinder to find all the essential elements of this offense beyond a reasonable doubt, and conclude beyond a reasonable doubt that no defense applied. Similarly, we ourselves, after weighing the evidence in the record of trial, making allowances for not having personally observed the witnesses, and applying neither a presumption of guilt or of innocence, reach our own independent determination that the evidence constitutes proof of each required element beyond a reasonable doubt and that no affirmative defense applied. The evidence was legally and factually sufficient.

*3. Dereliction of Duty by Providing Alcohol to a Minor*

Appellant also argues that the evidence is factually and legally insufficient to support his conviction for dereliction of duty. He asserts two bases for that argument. First, he claims, the regulations noticed by the military judge were irrelevant because they did not establish a duty not to provide alcohol to a minor while not on an Air Force installation. Second, he asserts, the evidence was insufficient to show that he actually knew JC was underage.

As discussed above, the military judge took judicial notice of New Jersey statutes that make it an offense to provide alcohol to a person under 21 and the paragraph of AFI 1-1 that provides "[s]tate and foreign country drinking age laws, including those in a deployed environment, must be obeyed both on and off-duty." Appellant argues that this provision only applies to underage consumption by Airmen. The provision, in fact, does not contain an express prohibition on providing alcoholic beverages to minors, much less a prohibition on providing them to civilian minors. In the dereliction of duty context, however, no such explicit prohibition is needed. To the extent the application of AFI 1-1 to providing alcohol to a minor is unclear, "common sense and military custom help fill in the gaps." *United States v. Shelly*, 19 M.J. 325, 328 (C.M.A. 1985). We find that a common sense reading of AFI 1-1's reference to a state's "drinking age laws" as opposed to just the state's minimum drinking age, includes the broader scope of all the laws dealing with drinking age, including, as in this case, a law that makes it disorderly conduct to provide alcohol to a person not of drinking age. New Jersey had such a law, and Appellant failed to obey it. His conduct failed to live up to the duty established by a common sense reading of AFI 1-1.

We are also unpersuaded by Appellant's argument that the evidence of JC's minority was insufficient to show a willful dereliction of duty. In the context of dereliction of duty, "'[w]illfully' means intentionally. It refers to the doing of an act knowingly and purposely, specifically intending the natural and probable consequences

of the act." *MCM*, pt. IV, ¶ 16.c.(3)(c). Appellant's intent can be proven by circumstantial evidence. *See Kearns*, 73 M.J. at 182. JC provided substantial circumstantial evidence of Appellant's knowledge that she was under 21. Appellant first became aware of JC via an online service. JC's profile on that service listed her age, at the time, as 19. She lived with her mother and had a curfew. When Appellant bought beer for JC, she did not go in the store with him, even though on at least one occasion she gave Appellant money for the beer. While she testified that she would sometimes provide her own alcohol, she also testified that Appellant procured alcohol for her more than five times, including one episode where they met at a liquor store and he went inside alone to buy the beer.

Having weighed the evidence in the record of trial, both with regard to the duty imposed by AFI 1-1 and with regard to Appellant's knowledge of JC's age, and having made allowances for not having personally observed the witnesses, we are personally convinced of Appellant's guilt beyond a reasonable doubt of dereliction of duty for failing to refrain from providing alcohol to JC. Similarly, we find a reasonable factfinder could have found all the essential elements of that offense beyond a reasonable doubt.

*4. Sexual Assault of JC*

Appellant also argues that the evidence supporting the conviction of sexual assault of JC was legally and factually insufficient because the Government failed to establish that JC was incapable of consenting to the sexual act due to impairment. Appellant's argument focuses extensively on JC's history of alcohol use, the events leading up to her return to Appellant's apartment, and her post-assault conduct. Appellant fails to explain his own statement to his friend that while he and JC were having intercourse, JC was "in and out of consciousness." Appellant also suggests that the Government failed to prove any incapacity resulted from impairment by an intoxicant. The evidence of record indicates that JC was sufficiently intoxicated to cause her friend's mother, a former bartender, to take her to the shower to sober up. It also established that on the trip from her friend's house to Appellant's apartment, she was so intoxicated that she could not get from her car to the gate of her house without stumbling and swaying, that she became incontinent, and that she needed Appellant's help to write a simple note for her mother. The evidence indicates Appellant was aware of all of these circumstances. Having weighed the evidence in the record of trial, with allowances for not having personally observed the witnesses, we are personally convinced of Appellant's guilt beyond a reasonable doubt of sexual assault of JC. Similarly, we find a reasonable factfinder could have found all the essential elements of that offense beyond a reasonable doubt.

*Ineffective Assistance of Counsel*

Appellant also asserts, pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A. 1982), that he was denied his right under the Sixth Amendment[6] to effective assistance of counsel when counsel failed to conduct sufficient voir dire of one member[7] and failed to call two witnesses. We review ineffective assistance of counsel claims de novo. *United States v. Anderson*, 55 M.J. 198, 201 (C.A.A.F. 2001); *United States v. Wiley*, 47 M.J. 158, 159 (C.A.A.F. 1997).

The Supreme Court found that the Sixth Amendment entitles criminal defendants to representation that does not fall "below an objective standard of reasonableness" in light of "prevailing professional norms." *Strickland v. Washington*, 466 U.S. 668, 688 (1984). Our inquiry into an attorney's representation must be "highly deferential" to the attorney's performance and employ "a strong presumption" that counsel's conduct falls within the wide range of professionally competent assistance." *Id*. at 688–89. Our superior court has applied this standard to military courts-martial, noting that, "In order to prevail on a claim of ineffective assistance of counsel, an appellant must demonstrate both (1) that his counsel's performance was deficient, and (2) that this deficiency resulted in prejudice." *United States v. Green*, 68 M.J. 360, 361 (C.A.A.F. 2010) (citing *Strickland*, 466 U.S. at 687; *United States v. Mazza*, 67 M.J. 470, 474 (C.A.A.F. 2009)). "The likelihood of a different result must be substantial, not just conceivable." *Harrington, v. Richter*, 562 U.S. 86, 112 (2011).

We "must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." *Strickland*, 466 U.S. at 690. In making that determination, we consider the totality of the circumstances, and bear in mind "counsel's function, as elaborated in prevailing professional norms, is to make the adversarial testing process work . . . [and] recognize that counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id*. The appellant bears the heavy burden of establishing that his trial defense counsel were ineffective. *See United States v. McConnell*, 55 M.J. 479, 484 (C.A.A.F. 2001). "There is no reason for a court deciding an ineffective assistance claim to approach the inquiry in the same order [as the Court in *Strickland*] or even to address both components of the inquiry if the defendant makes an insufficient showing on one." *Id.* (quoting *Strickland*, 466 U.S. at 697). When making the two-part inquiry into the reasonableness of counsel's conduct and whether prejudice resulted, we note that "in many cases review of the record itself is sufficient" to resolve

---

[6] U.S. CONST. amend. VI.

[7] Appellant argues that he was denied a fair trial when his trial defense counsel elicited potentially prejudicial information from a panel member but failed to further question that panel member for actual or implied bias. Although he lists this assertion separate from his specific claim of ineffective assistance of counsel, we construe this assertion as a claim of ineffective assistance of counsel as well.

the appellant's claims of ineffectiveness. *United States v. Lewis*, 42 M.J.1, 3 (C.A.A.F. 1995).

*1. Voir Dire*

Appellant asserts his trial defense counsel were ineffective by failing to conduct individual voir dire of a member. The members in this case submitted pretrial questionnaires concerning their exposure to public statements about sexual assault. In response to a question about what they had heard or read about sexual assault, the member indicated "[t]here is currently a major problem regarding sexual assault in the AF, and there is a zero tolerance policy."

Although Appellant and both trial defense counsel submitted affidavits, we find that we can resolve this issue on the basis of the record alone. The military judge confronted the issue of public attention on the issue of sexual assault during his preliminary colloquy with the potential members. He summarized the then-Secretary of Defense's remarks emphasizing the independent role of personnel carrying out military justice duties. He specifically addressed sexual assault training members may have received and their duty to disregard anything they may have heard outside the courtroom and base their judgments solely upon the evidence and his instructions on the law. He concluded that section of his colloquy with the question, "Does any one of you feel any pressure to convict the accused because of any Air Force or [Department of Defense] policy regarding sexual assault?" to which all of the potential members replied in the negative.

In light of the military judge's substantial inquiry and group voir dire concerning the members' duty to disregard what they may have heard concerning Air Force or Department of Defense policy and carry out their duties solely by reference to the evidence and his instructions on the law, we find that trial defense counsel did not fall below an objective standard of reasonableness in declining to inquire further into the member's responses on the questionnaire or to challenge the member on the basis of those answers.

*2. Witness Selection*

Appellant also asserts that his trial defense counsel were ineffective by failing to call two witnesses, or introduce other evidence derived from the witnesses, to impeach KM's testimony. Even if we assume all the facts contained in Appellant's affidavit were true, we would find that he has failed to show a substantial likelihood that the outcome of his trial would have been different. One witness, according to Appellant, would testify that KM told police that Appellant "never laid a hand on her or abused her in any way." The other would have testified that she heard KM say that if she did not get what she wanted, she would claim abuse. Even without this proffered testimony, similar evidence was clearly before the members and was incorporated in trial defense counsels'

presentation of the case.  As Appellant acknowledges, one witness testified during the trial that KM said that if she did not get alimony she would open up the rape charges. This testimony was not substantially challenged.  Trial defense counsel, during cross-examination, challenged KM on two other instances in which she made similar statements, although KM denied making those statements.  During cross-examination, counsel also brought out multiple times KM made statements that did not include some or all of the allegations she was asserting at trial.  Trial defense counsel also introduced evidence and argued that KM had a financial motive to make fabricated claims of abuse, and that she was sufficiently bitter about the resolution of the divorce that the possibility that she made the allegations strictly out of vengeance could not be ruled out beyond a reasonable doubt.  The evidence Appellant now claims his counsel should have pursued would not have materially contributed to the evidence already admitted at trial. Accordingly, we find that Appellant has not shown a substantial likelihood that the proffered evidence would have changed the outcome of his trial and decline to grant relief on this basis.

*Challenge of Panel Member*

Appellant also asserts pursuant to *Grostefon* that the military judge erred by denying the challenge for cause against a panel member who previously had an intimate relationship with a victim of sexual assault.  Appellant asserts that the military judge should have excluded the member based upon implied bias.

Implied bias is "viewed through the eyes of the public, focusing on the appearance of fairness." *United States v. Bagstad*, 68 M.J. 460, 462 (C.A.A.F. 2010) (quoting *United States v. Clay*, 64 M.J. 274, 276 (C.A.A.F. 2007)) (internal quotation marks omitted). Therefore, appellate courts employ an objective standard when reviewing a military judge's decision regarding implied bias.  *United States v. Strand*, 59 M.J. 455, 458 (C.A.A.F. 2004).  We review issues of implied bias under a standard less deferential than abuse of discretion, but more deferential than de novo.  *Id.* (citing *United States v. Miles*, 58 M.J. 192, 195 (C.A.A.F. 2003)).  In reviewing challenges for cause under the implied bias standard, military judges are required to follow the "liberal grant" mandate, which "supports the UCMJ's interest in ensuring that members of the military have their guilt or innocence determined 'by a jury composed of individuals with a fair and open mind.'" *United States v. James*, 61 M.J. 132, 139 (C.A.A.F. 2005) (quoting *United States v. Smart*, 21 M.J. 15, 18 (C.M.A. 1985)).  "[I]n the absence of actual bias, where a military judge considers a challenge based upon implied bias, recognizes his duty to liberally grant defense challenges, and places his reasoning on the record, instances in which the military judge's exercise of discretion will be reversed will indeed be rare."  *United States v. Clay*, 64 M.J. 274, 277 (C.A.A.F. 2007).

In this case, the potential bias arose from the member's experience with a former girlfriend who contacted him about a sexual assault.  The member dated the woman about

12 years prior to Appellant's trial. About 10 years prior to trial, after the romantic relationship with the woman had ended, she contacted the member to confide in him that she had been assaulted. The member stated that he believed that she contacted him because she still felt close to him, yet he was far enough removed that she could use him as a sounding board to weigh her options.

The military judge explained his ruling on the record:

> The defense challenge for cause against [the challenged member] will be denied. And I will note that I don't find any reason for there to be any actual bias, none of that. And I have considered the implied bias and the liberal grant mandate and I think that the contrast between [an excused member] and [the challenged member] is a good illustration of one where there is implied bias in the case of [the excused member]; a family member, things close. In this case with [the challenged member], as pointed out, the disclosure came a decade or so ago. By this time [he had] a rather casual relationship with his ex-girlfriend. He said—I watched [the challenged member's] demeanor. He said that he was disturbed but he didn't express any sense of outrage. He said that he can put these matters completely out of his mind and judge this case based upon its merits, and I am satisfied that a challenge for cause is not warranted at this point.

There is no basis for us to overturn the military judge's decision not to excuse the member. The military judge considered the challenge based upon implied bias, recognized his duty to liberally grant defense challenges, and placed his reasoning on the record. That reasoning was rational and based upon factual determinations well-supported by the record. The military judge is entitled to substantial deference and we decline to intrude on his reasonable exercise of discretion.

*Prosecutorial Misconduct*

Finally, Appellant argues pursuant to *Grostefon* that the Government wrongfully failed to investigate potential criminal offenses by JC. In order to raise a claim of selective prosecution, Appellant must first show that other similarly situated violators are generally not prosecuted. *See United States v. McKinley*, 48 M.J. 280, 282 (C.A.A.F. 1998). In this case, JC was a civilian and therefore not similarly situated. This issue is without merit.

*Conclusion*

The approved findings and sentence are correct in law and fact, and no error materially prejudicial to the substantial rights of Appellant occurred.  Articles 59(a) and  66(c), UCMJ, 10 U.S.C. §§ 859(a), 866(c).  Accordingly, the approved findings and sentence are **AFFIRMED.**

FOR THE COURT

LEAH M. CALAHAN
Deputy Clerk of the Court