*91 OHLSON, Judge,
with whom BAKER, Chief Judge, joins (dissenting):
It has long been established that an accused has a right to an impartial and unbiased panel during a court-martial. United States v. Mack, 41 M.J. 51, 54 (C.M.A.1994). And yet in the instant case, I conclude that the military judge failed to take the required steps to vindicate this fundamental right on behalf of Appellant, and that the military judge thereby abused his discretion. Therefore, because I disagree with the majority’s analysis of the assigned issues, I respectfully dissent'.
Facts
As noted by the majority, at trial Appellant testified that she twice had temporarily absented herself from her unit without authorization, and thereby conceded that she was guilty of two unauthorized absence offenses. Contrary to Appellant’s assertions, however, the Government sought to prove that Appellant intended to remain away from her unit permanently. As a consequence, the court-martial centered on Appellant’s truthfulness when she claimed at trial that she had never formed the intent to permanently absent herself.
During an Article 39(a), Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 839(a) (2012), session the defense noted that the Government was likely to offer into evidence a statement Appellant had made to investigators upon her return to her unit. The defense argued that a portion of that statement needed to be redacted in order to protect Appellant’s Article 31(b), UCMJ, 10 U.S.C. § 831(b) (2012), rights. Specifically, the defense asked the military judge to require the redaction of the section of the statement where an investigator, Senior Airman Aeree, asked Appellant if she had ever planned on turning herself in, and Appellant had refused to answer. This issue seemingly became moot when the Government informed the court that it already had redacted that portion of the statement, and the military judge then admitted the statement into evidence.
As the trial progressed, Appellant repeatedly asserted that despite her absences from her unit — which totaled approximately three weeks — she never had decided to remain away permanently. At that point, however, the military judge chose to begin asking Appellant questions in front of the panel members. Specifically, the military judge asked Appellant if she had told Investigator # 1 or Investigator # 2 that she intended to “come back.” Appellant correctly responded that these two investigators had not asked her that question and that she “didn’t tell them one way or the other.” The military judge did not pursue that matter further. Nevertheless, during its recross examination of Appellant, the Government first gained confirmation that Investigator # 1 and Investigator # 2 had never asked her whether she intended to return to her unit, and then asked Appellant, “Did Senior Airman Aeree ask you if you intended to come back?”
Obviously mindful of the Article 31(b), U.CMJ, implications of the Government’s question, the defense immediately objected on the ground that the question was “beyond the scope.” Without hearing any argument on the point, the military judge overruled the objection. Thus, the Government proceeded with its inquiry, and Appellant conceded to trial counsel that when questioned by Senior Airman Aeree about her intentions of returning, “I used my right to remain silent.”
Following examination by the parties and the military judge, the military judge permitted the panel members to ask Appellant questions. In doing so, the militaiy judge failed to follow the clear procedures spelled out in Military Rule of Evidence (M.R.E.) 614(b).[1] Rather, the military judge permitted the panel members to directly question Appellant orally; nothing was written down, and there was no prior review of the ques *92 tions in any manner. Not surprisingly, this highly irregular procedure — whereby no fewer than seven panel members asked questions that span nearly thirty pages in the record of trial — resulted in an appealable issue.
Specifically, one of the panel members, Major Cereste, asked Appellant the following “question” which is at issue:
Q. My next question is: You testified on numerous accounts of overt deception, and to me you seem to have a heightened intuition of other people’s motives. For example, you were aware that perhaps Airman Dover might tell people X, Y, and Z, so you told her certain things. Have you also heard of lying by omission — so—exercising your right to remain silent. So, how is your testimony today regarding never intending to desert the Air Force permanently different from your previous pattern of deception?
Once the panel members concluded their questioning of Appellant, the military judge placed the court in recess and then called an Article 39(a), UCMJ, session. At that session, the defense noted that “since the members are out,” he was going to now request'a mistrial.[2] In furtherance of this motion, the defense counsel stated the following:
There was a line of questioning that took place during the cross-examination — I think the subsequent cross-examination of Airman McFadden — that had to do with a statement about her exercising her right to remain silent. And the prosecution had previously redacted that from the 1168. The defense did not open the door to that cross-examination. The prosecution took advantage of an opportunity presented by the court, during the court’s questions, to enter into an area that the prosecution had told us they would not. As a direct result of that line of questioning, Major Cereste, in the back row, accused Airman McFadden of lying by omission by exercise of her right to remain silent.
At this time, pursuant to R.C.M. 915, we believe it’s manifestly necessary in the interest of justice because of [Appellant’s] response to a court member, to declare a mistrial based on the government’s attempt to get that statement — that comment on [Appellant’s] right to remain silent on the record and into the members’ ears.[3]
The military judge responded to this objection by: (a) incorrectly characterizing Appellant’s testimony by stating that Appellant had initially testified that “nobody” asked her about whether she had intended to return to her unit; (b) opining that the Government’s question was permissible because this answer by Appellant was “misleading”; (c) denying the motion for a mistrial; and (d) stating that he would “consider giving the members a cautionary instruction.”
Indeed, upon reconvening the court-martial, the only action the military judge took to address this issue was to instruct the panel members as follows: ‘You may not consider the accused’s exercise of her right to remain silent in any way adverse to the accused. You may not consider such exercise as lying by omission.”
Analysis
In my view, the military judge’s single step of giving the panel members a putatively curative instruction was insufficient to ensure the fairness of the trial and did not adequately ensure that the panel remained impartial and unbiased. See Mack, 41 M.J. at 54-56. When Major Cereste equated Appellant’s invocation of her right to remain silent with lying by omission, it is apparent from the context that Major Cereste already had concluded that Appellant was lying about the *93 central point of this court-martial — whether Appellant was being truthful when she testified that she had never formed the intent to absent herself from her unit permanently. Therefore, based on the record before us, it is reasonable to conclude that Major Cereste had failed to remain open minded about the case until the close of all the evidence, which directly contravened the express prior instruction of the military judge. As a consequence, absent any step by the military judge to voir dire Major Cereste, I believe there is sufficient evidence for a reasonable person to conclude that Major Cereste was no longer an impartial and unbiased panel member. See United States v. Strand, 59 M.J. 455, 459 (C.A.A.F.2004). And, as the provisions of Rule for Courts-Martial (R.C.M.) 912(f)(1), 912(f)(l)(N), mandate, a panel member “shall be excused for cause” when necessary to ensure that the court-martial is “free from substantial doubt as to legality, fairness, and impartiality.”
It is true that instead of seeking a mistrial it may have been more appropriate for the defense counsel to have asked the military judge to excuse Major Cereste and to voir dire the other panel members to determine whether they had been tainted by Major Cereste’s accusations against Appellant. After all, granting a mistrial is considered a “drastic” remedy and such a step generally would be highly disfavored without an additional showing by. the defense.[4] Nevertheless, in light of the fact that R.C.M. 915(a) states that a mistrial may be declared “in the interest of justice because of circumstances arising during the proceedings which cast substantial doubt upon the fairness of the proceedings,” it was not entirely unreasonable for the defense counsel to make such a request.
As the defense counsel noted in support of his mistrial motion: (a) the military judge had unilaterally laid the groundwork which resulted in his decision to improperly permit the Government to elicit testimony from Appellant regarding her prior invocation of her right to remain silent; (b) a panel member used this improper disclosure to conclude that Appellant had lied by omission when she refused to admit to Senior Airman Aeree that she had intended to stay away from her unit permanently;[5] and (c) because the military judge had failed to comply with the procedures contained in M.R.E. 614, the other panel members had heard, and had been potentially tainted by, Major Cereste’s comment about Appellant’s truthfulness.[6] Thus, it is understandable that the defense counsel had concluded that “substantial doubt” had been cast “upon the fairness of the proceedings.” R.C.M. 915.
Moreover, under such circumstances the military judge was not presented with a binary choice of either granting a mistrial or only giving an additional instruction. Rather, consistent with this Court’s precedent, once the defense counsel made a motion for a mistrial, the military judge was required to consider any lesser remedies short of a mistrial that would adequately address the defense’s legitimate concerns. See United States v. Ashby, 68 M.J. 108, 122 (C.A.A.F.2009). In my view, Major Cereste’s questioning of Appellant adequately demonstrated that she had not kept an open mind until the close of evidence. And importantly, this failure to keep an open mind was in direct *94 contravention of the military judge’s prior instructions. Accordingly, I believe there is no basis to conclude on the record before us that Major Cereste would be willing or able to follow any additional instructions the military judge might give. Therefore, I find the military judge’s decision to only give a putative curative instruction to be wholly inadequate.
Conclusion
I conclude that based on the totality of the circumstances in the instant case, at a minimum the military judge was obligated to take the simple and appropriate step of voir diring Major Cereste and the other court members to determine whether additional measures were necessary to ensure that the panel remained fair and impartial. Upon failing to take that step, I conclude that the military judge should have recognized that Major Cereste’s statement substantively brought into question her fairness and impartiality, and therefore the military judge abused his discretion when he failed to sua sponte excuse Major Cereste from the court-martial panel. Strand, 59 M.J. at 459-60. Further, I do not find a basis to conclude that the military judge’s putative curative instructions rendered this error harmless.
Accordingly, because I disagree with the majority’s analysis of the assigned issues, I respectfully dissent.

. M.R.E. 614(b) provides:
■ The military judge or members may interrogate witnesses, whether called by the military judge, the members, or a party. Members shall submit their questions to the military judge in writing so that a ruling may be made on the propriety of the questions or the course of the questioning and so that questions may be asked on behalf of the court by the military judge in a form acceptable to the military judge.

. The timing of the defense counsel’s objection was perfectly appropriate. M.R.E. 614(c) provides, "Objections to the calling of witnesses by the military judge or the members or to the interrogation by the military judge or the members may be made at the time or at the next available opportunity when the members are not present.”

. The United States Air Force Form 1168, referred to by the defense counsel, is a standard form utilized in the investigative context to take written statements providing details of suspected criminal activity. The same form can be tailored for statements from suspects, witnesses, and complainants.

. See United States v. Diaz, 59 M.J. 79, 90, 114—15 (C.A.A.F.2003).

. The importance of this improper disclosure is underscored by the fact that the Government had scant independent evidence proving that the Appellant intended to stay away from her unit permanently. Rather, the Government’s case was based squarely on the Appellant’s state of mind as demonstrated by her actions, statements, and testimony. Accordingly, the Appellant’s credibility was at the very heart of this case, and once Major Cereste used the improper disclosure that the Appellant had invoked her Article 31(b), UCMJ, rights as the basis for challenging in open court the Appellant's supposed acts of "deception” and "lying by omission,” the Appellant's credibility was considerably undermined.

.As evidence that other panel members may have been tainted by Major Cereste’s accusatory questioning of Appellant, and of the prejudice to Appellant that may have resulted from this questioning, I note that the trial counsel recommended a sentence that included confinement for eighteen months but the panel awarded a sentence that included confinement for twenty-four months.