# UNITED STATES AIR FORCE
# COURT OF CRIMINAL APPEALS

_____

**No. ACM 39268**

_____

**UNITED STATES**
*Appellee*

**v.**

**Jarek P. PAULETT**
Senior Airman (E-4), U.S. Air Force, *Appellant*

_____

Appeal from the United States Air Force Trial Judiciary

Decided 14 September 2018

_____

*Military Judge:* Andrew Kalavanos.

*Approved sentence:* Dishonorable discharge, confinement for 3 years and 6 months, and reduction to E-1. Sentence adjudged 4 February 2017 by GCM convened at Hurlburt Field, Florida.

*For Appellant:* Major Meghan Glines-Barney, USAF.

*For Appellee:* Colonel Julie L. Pitvorec, USAF; Lieutenant Colonel Joseph J. Kubler, USAF; Lieutenant Colonel G. Matt Osborn, USAF; Major Tyler B. Musselman, USAF; Captain Michael T. Bunnell, USAF; Technical Sergeant Jonathan G. Rector, USAF;[1] Mary Ellen Payne, Esquire.

Before HARDING, HUYGEN, and POSCH, *Appellate Military Judges.*

Judge POSCH delivered the opinion of the court, in which Senior Judge HARDING and Judge HUYGEN joined.

---

[1] Technical Sergeant Rector is a military paralegal with the Air Force Legal Operations Agency and was at all times supervised by attorneys admitted to practice before this court.

_____

**This is an unpublished opinion and, as such, does not serve as precedent under AFCCA Rule of Practice and Procedure 18.4.**

_____

POSCH, Judge:

A general court-martial composed of officer and enlisted members found Appellant guilty, contrary to his pleas, of one charge and two specifications of sexual assault in violation of Article 120, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 920. Appellant was sentenced to a dishonorable discharge, confinement for three years and six months, and reduction to the grade of E-1. Before taking action on the findings and sentence, the convening authority deferred the automatic forfeiture of Appellant's pay and allowances, and denied Appellant's request for deferment of the reduction in grade. At action, the convening authority approved the adjudged sentence; however, he waived automatic forfeitures for a period of six months and directed payment to Appellant's spouse for her benefit and the benefit of their unborn child.[2]

Appellant raises two issues on appeal: (1) whether the military judge erred in denying one of Appellant's challenges for cause and (2) whether the convening authority erred in denying Appellant's request to defer his reduction in grade. Finding no error materially prejudicial to the substantial rights of Appellant, we affirm the findings and sentence.

## I. BACKGROUND

Appellant was assigned to Hurlburt Field, Florida, where he met and became friends with a co-worker, Airman First Class (A1C) SS. In August 2015, after playing a drinking game with A1C SS in her dorm room, Appellant put his hand under her shorts and penetrated her vulva with his fingers. Appellant's conduct was unwelcomed and done without A1C SS's consent, and with the intent to gratify Appellant's sexual desires. Feeling violated and confused, A1C SS left Appellant alone in her room and went to another Airman's room to sleep.

In October 2015, after an evening of heavy drinking with Appellant and other friends, A1C SS slept at an off-base apartment on a couch in the living room near where Appellant had also lain down to sleep. While A1C SS was "passed out," Appellant penetrated her vulva with his penis. A1C SS described

_____

[2] The convening authority's action credited Appellant one day for illegal pretrial confinement in accordance with a ruling by the military judge.

not being fully aware of what was happening because she was impaired by the amount of alcohol she had drunk. When A1C SS awoke in the morning, she asked Appellant if he had had sex with her. Appellant told her "no" and put forward that she was probably just dreaming. Appellant suggested that nothing sexual could have happened to A1C SS while she slept because of her sleeping position on the couch. Despite these assurances, A1C SS grew increasingly concerned that Appellant had sexually assaulted her. Later that afternoon, a friend drove A1C SS to an emergency room to undergo a sexual assault forensic examination.

The examination showed blunt-force penetrating injury to A1C SS's genital area. Forensic testing matched Appellant's DNA profile to seminal fluid collected on swabs taken from outside A1C SS's vaginal area, from inside the underwear that A1C SS had worn during the assault, and from two stains found on the couch where she had slept.

In December 2015, Appellant was interviewed by agents of the Air Force Office of Special Investigations (AFOSI). Appellant initially denied that he or anyone else had engaged in sexual intercourse with A1C SS while she slept on the couch. Appellant repeatedly asserted that he could not recall any sexual activity with A1C SS, even after the agents confronted Appellant with the results of the DNA testing. Appellant later changed his story and claimed that A1C SS had asked Appellant if he wanted to have sex with her and that he had readily agreed, penetrating her one time for ten seconds, or at most, a minute or two.

## II. DISCUSSION

### A. Denial of Challenge for Cause for Implied Bias

Appellant elected to be tried by a panel consisting of officer and enlisted members. Of the 11 members detailed by the convening authority, the Defense challenged 8 members for cause. The military judge granted five challenges, four of which were unopposed by trial counsel. The military judge denied the challenge for cause of Chief Master Sergeant (CMSgt) BB and two others. The Defense used its peremptory challenge on one of those other two.

Appellant contends CMSgt BB should have been excused after the Defense challenged him for cause, specifically, implied bias. The Defense's three-part basis for the implied bias challenge included that: (1) CMSgt BB was involved as an additional duty first sergeant in a sexual assault case at a previous assignment about two years prior; (2) CMSgt BB had read an email from the servicing legal office that said the court members had not found enough evidence to convict the Airman involved in that prior case; and (3) CMSgt BB

voiced concern during voir dire about the possibility that his service on Appellant's court-martial panel might be criticized by others. The military judge denied the challenge. Appellant alleges the military judge erred. We are not persuaded.

### 1. Law

Rule for Courts-Martial (R.C.M.) 912(f)(1)(N) provides that a member shall be excused for cause whenever it appears that the member "[s]hould not sit as a member in the interest of having the court-martial free from substantial doubt as to legality, fairness, and impartiality."

Implied bias is "viewed through the eyes of the public, focusing on the appearance of fairness." *United States v. Bagstad*, 68 M.J. 460, 462 (C.A.A.F. 2010) (quoting *United States v. Clay*, 64 M.J. 274, 276 (C.A.A.F. 2007)). Therefore, appellate courts employ an objective standard when reviewing a military judge's decision regarding implied bias. *United States v. Strand*, 59 M.J. 455, 458 (C.A.A.F. 2004). "The hypothetical 'public' is assumed to be familiar with the military justice system." *Bagstad*, 68 M.J. at 462 (citing *United States v. Downing*, 56 M.J. 419, 423 (C.A.A.F. 2002)).

In reviewing challenges for cause under the implied bias standard, military judges are required to follow the "liberal grant" mandate, which "supports the UCMJ's interest in ensuring that members of the military have their guilt or innocence determined 'by a jury composed of individuals with a fair and open mind.'" *United States v. James*, 61 M.J. 132, 139 (C.A.A.F. 2005) (quoting *United States v. Smart*, 21 M.J. 15, 18 (C.M.A. 1985)). "[M]ilitary judges must follow the liberal-grant mandate in ruling on challenges for cause, but we will not overturn the military judge's determination not to grant a challenge except for a clear abuse of discretion in applying the liberal-grant mandate." *United States v. White*, 36 M.J. 284, 287 (C.M.A. 1993). "[I]n the absence of actual bias, where a military judge considers a challenge based on implied bias, recognizes his duty to liberally grant defense challenges, and places his reasoning on the record, instances in which the military judge's exercise of discretion will be reversed will indeed be rare." *Clay*, 64 M.J. at 277.

### 2. Voir Dire of CMSgt BB

In response to a trial defense counsel question during group voir dire, CMSgt BB related he had some involvement in a sexual assault case a little over two years prior. He was filling in for a first sergeant when a member of his unit was identified as a subject for questioning by AFOSI. During individual voir dire, CMSgt BB explained his involvement:

> I was contacted that they needed to see one of my members who happened to be on duty that day. So, I went and picked him up, brought him down to the [AFOSI] office. I was then released and

they were questioning him. And then, I had to come back and pick him up. We took him over to the dorms so that they could collect evidence, and I stood outside the door with the lead [AFOSI] agent while we were waiting for them to do that. And, then, I transported him to the hospital off base so that they could do a sample kit. And then, once he was completed with the sample kit, then I drove him back to the base.

CMSgt BB explained that the result of the investigation was a court-martial that ended in a finding of not guilty. He watched the first three days of the trial until duties called him away. Earlier, during group voir dire, CMSgt BB expressed no concern that anyone in his chain of command would be disappointed in him if he were to find Appellant not guilty. However, he answered affirmatively to a question about whether his "service on this panel may be criticized by others." Trial defense counsel probed further during individual voir dire, beginning with a question about the acquittal of the Airman in the previous case:

> Q [Trial Defense Counsel]. . . . And what were your . . . views on the finding of not guilty?
>
> A [CMSgt BB]. . . . I felt that it made the system show that it worked; but, there was an email that had gone out that said that there wasn't enough evidence to be found—to find him guilty. . . . But that the system did work in that he went to court, he had his day in court, and was able to provide evidence of his innocence.
>
> Q. And who is that email coming from?
>
> A. It went out . . . from the [Judge Advocate General (JAG)] to the first sergeants distro list.
>
> Q. I see. And so . . . the JAG was basically saying that something happened, but we just didn't have enough evidence in this case to convict?
>
> A. Yes, sir, that was what I took from the email.
>
> Q. Okay. And you indicated that you are concerned that your service on this panel might be criticized?
>
> . . . .
>
> A. Just, in anything that goes on in life, things are armchair quarterbacked. People who aren't part of the process, who don't see what happened in this courtroom, once they hear the results, they're just going to criticize anybody who was on there and have

their own opinion on how things should have gone, and that's just how I viewed it.

Q. . . . is part of that based on your experience with that previous case?

A. No, sir, more on just other emergencies like the [ ] Air Show crash. As soon as the crash happened, everybody's . . . basically criticizing how the fire department responded, and you get a lot of that. You get a lot of false reporting that can make people decide that they could have done it better, or do it a different way than who was actually on the scene.

Trial defense counsel challenged CMSgt BB's service on Appellant's panel on the basis of implied bias, citing as disqualifying CMSgt BB's involvement in the prior sexual assault case, the email he received from the legal office, and CMSgt BB's remarks about criticism by others.[3]

### 3. Ruling by the Military Judge

Before ruling on the challenge, the military judge addressed CMSgt BB's observation about possible criticism by others, concluding that it was not directed at a court-martial's outcome generally or Appellant's case specifically:

[E]ssentially what [CMSgt BB] said was, any decision could be quote, criticized. Everyone gets armchair quarterbacked. And, when asked why he's come to that sort of conclusion or world view, he talked about a prior case involving an air crash and how the response to that air crash was criticized. So, my recollection is that he was speaking to armchair quarterbacking, second guessing; that, basically, as a leader, any decision you make is going to be, on some level criticized. . . . [H]e did not say it with any sort of particularity as it relates to sexual assault or this case in particular . . . .

The military judge ruled on this part of the Defense challenge, saying, "There was no indication of bias or concern or fear that there'd be some sort of negative repercussion depending on the outcome of this trial." The military

---

[3] Trial defense counsel also challenged CMSgt BB for actual bias for the same three reasons and challenged him for both actual and implied bias on an unrelated ground not before us on appeal. Appellant does not raise the denial of the actual bias challenge on appeal. We have reviewed the record and find that the military judge did not err in denying the actual bias challenge.

judge also addressed the challenge insofar as it concerned CMSgt BB's involvement in the prior sexual assault case and the email from the legal office that followed the acquittal:

> [CMSgt BB] also talked about how one of his own unit members was questioned by [the AFOSI], how a kit was done, having watched his unit member go through the process, the member was acquitted as a result of it, he didn't appear to have any sort of emotional or negative response to it. He watched -- I think he watched at the trial for about three days. In discussing the case, he talked about how alcohol was involved, underage drinking, kissing and so forth. But, ultimately, what he said was, and this is on an acquittal, his view on the findings showed that the system worked. Now, according to his recollection, an email went out from the legal office to the first sergeants to say that even if he was acquitted maybe, you know, something had taken place, but it certainly wasn't Chief Master Sergeant [BB's] explicit statements in the courtroom or his non-verbal behavior that, yeah, something happened, I guess this guy got away with it. There was no indication, whatsoever, of that. In fact, he just kept saying that the system worked.

Ultimately, the military judge denied the Defense challenge and provided the following explanation of his rationale:

> I find [CMSgt BB's] responses were very candid. He indicated that . . . he would be able and willing to follow the court's instruction. Again, [CMSgt BB] appeared thoughtful and sincere in all of his responses, and he appears to be taking his duties as a member of this court very, very seriously. He also appears confident and not susceptible to improper inference or coercion, and that he'll come to his own decisions based on the evidence that he's presented in this case as well as the law that is instructed on -- the law that is given to him. Therefore, I have considered the challenge for cause on the basis of both actual and implied bias and the mandate to liberally grant defense challenges, and the challenge is denied.

### 4. Analysis

The crux of Appellant's argument on appeal is that the military judge erred in denying the challenge for implied bias because a member of the public would conclude that CMSgt BB was vulnerable to concerns about outside criticism, or in the words of the trial defense counsel, "[CMSgt BB] may be voting a certain way because he's sort of scared or not sure about how others will view

him." We have examined the entirety of CMSgt BB's voir dire and the military judge's observations of CMSgt BB's demeanor and find that the military judge did not err in denying the challenge for implied bias.

In determining whether the public may question the fairness of the trial with CMSgt BB serving as a panel member, we begin our analysis with his affirmative response to the Defense question, "Do you believe that your service on this panel may be criticized by others?" CMSgt BB's perception that outsiders might be disposed to examine the panel's findings and sentence and find fault is the beginning of a proper line of inquiry to find implied bias, but it is not the end. What matters is not that a prospective member is aware that others who neither examined evidence nor deliberated might criticize a result. Rather, what matters is whether the concern that others may criticize will influence a panel member's decision making, and if the public can be certain that the member's judgment was not swayed by consideration of what others might think. This court does not have those concerns here. It is evident from our review of the record that CMSgt BB's reference to "armchair quarterback[ing]" was a criticism of outsiders who judge without having participated firsthand in the problem solving.

We next consider the other two bases of the Defense challenge for cause: CMSgt BB's involvement in a prior sexual assault case and the email he received from the legal office following that Airman's acquittal. Although the record does not reveal the contents of that email other than it stated that there was insufficient evidence to find the Airman guilty in that prior sexual assault case, there is no indication that either the email or CMSgt BB's knowledge of the prior case would affect whether or how he would exercise his independent judgment in Appellant's case. In CMSgt BB's words, what he learned from the prior case and had confirmed by the email was that "the system did work in that [the accused in the other case] went to court, he had his day in court," and he was acquitted.

We conclude that, viewed through the eyes of the public and focusing on the appearance of fairness, there was no demonstration of implied bias in CMSgt BB's responses to voir dire questions. On the contrary, his answers tended to show his willingness to decide the case based on the evidence at trial and his belief in the integrity and fairness of the system.

The military judge did not commit a clear abuse of discretion in denying the challenge for cause on the basis of implied bias. The military judge, through the entire voir dire process, frequently referenced the liberal grant mandate in granting and denying challenges for cause. The military judge specifically cited the liberal grant mandate as the justification for granting one Defense challenge for cause. From our review of the record in its entirety, we conclude that the military judge's recitation of the liberal grant mandate was not merely a

perfunctory or talismanic reference and is worthy of some deference. The military judge considered the challenge based upon implied bias, recognized his duty to liberally grant defense challenges, and placed his rationale on the record. Under the totality of the circumstances, we find no reason to disturb his ruling. *United States v. Terry*, 64 M.J. 295, 302 (C.A.A.F. 2007) (quoting *Strand*, 59 M.J. at 456).

## B. Denial of Request to Defer Reduction in Grade

Three days after Appellant's court-martial ended, trial defense counsel made a written request of the convening authority to defer both Appellant's reduction in grade and automatic forfeiture of pay and allowances until final action, in accordance with Articles 57(a) and 58b, UCMJ, 10 U.S.C. §§ 857(a), 858b, and R.C.M. 1101(c) and (d). Trial defense counsel noted in his request on behalf of Appellant that "[b]y deferring the forfeitures you will give [Appellant's wife] time to get on her feet and smooth her transition to supporting herself." Nine days later, on 16 February 2017, the convening authority approved deferment of automatic forfeitures until action and denied Appellant's request to defer the reduction in grade; however, the convening authority did not articulate any reason for the denial. On 18 February 2017, 14 days after the date on which Appellant's sentence was adjudged, the reduction in grade automatically took effect by operation of Article 57(a)(1)(A), UCMJ.

In clemency, trial defense counsel asked the convening authority to waive automatic forfeitures for the benefit of Appellant's wife and their unborn child, but did not renew Appellant's request to defer the reduction in grade or ask that the reduction be disapproved. The convening authority approved the adjudged sentence on 31 May 2017 and granted clemency by waiving the automatic forfeitures for a period of six months from action.

Responding to a show-cause order of this court, the Government submitted an affidavit from the convening authority who denied Appellant's request to defer the reduction in grade. *See United States v. Gentry*, No. ACM S31361, 2008 CCA LEXIS 454, at *7–8 (A.F. Ct. Crim. App. 30 Oct. 2008) (unpub. op.) (quoting *United States v. Blanch*, 29 M.J. 672, 673 (A.F.C.M.R. 1989) (permitting the Government to "'enhance the paper trail' to clarify post-trial processing issues.")). In his affidavit, the convening authority explains the reasons for the denial of the deferment:

> [T]he severity of [Appellant's] crimes warranted immediate removal of Appellant's rank to maintain good order and discipline. . . . [and] Appellant did not demonstrate that his interests and the interests of the community in deferring the reduction in grade outweighed the community's interest in imposing the reduction on its [effective] date.

Appellant claims it was error for the convening authority not to give a reason for the denial of Appellant's request to defer the reduction in grade until action. Appellant also avers that the denial itself was error and requests that this court grant relief as the court deems appropriate under our Article 66(c), UCMJ, 10 U.S.C. § 866(c), authority to approve only the sentence, or such part of the sentence, that we find on the basis of the entire record should be approved.

We review the convening authority's action on a deferment request for an abuse of discretion. R.C.M. 1101(c)(3). "When a convening authority acts on an accused's request for deferment of all or part of an adjudged sentence, the action must be in writing . . . and must include the reasons upon which the action is based." *United States v. Sloan*, 35 M.J. 4, 6–7 (C.M.A. 1992) (footnote omitted), *overruled on other grounds, United States v. Dinger*, 77 M.J. 447 (C.A.A.F. 2018); *see also* R.C.M. 1101(c)(3), Discussion ("If the request for deferment is denied, the basis for the denial should be in writing and attached to the record of trial.").

The convening authority failed to identify any reason in the 16 February 2017 written denial of the deferral of Appellant's reduction in grade. This was error. However, the convening authority's omission does not entitle Appellant to relief unless it materially prejudiced a substantial right. *United States v. Eppes*, No. ACM 38881, 2017 CCA LEXIS 152, at \*43 (A.F. Ct. Crim. App. 21 Feb. 2017) (unpub. op.) (citing Article 59(a), UCMJ, 10 U.S.C. § 859(a)). "[A]bsent credible evidence that a convening authority denied a request to defer punishment for an unlawful or improper reason, an erroneous omission of reasons in a convening authority's denial of a deferment request does not entitle an appellant to relief." *Id.* at \*43 (citing *United States v. Zimmer*, 56 M.J. 869, 874 (A. Ct. Crim. App. 2002)).

We have no evidence that Appellant was materially prejudiced by the omitted explanation or that the convening authority's denial was for an unlawful or improper reason. While appellate defense counsel avers that Appellant's wife received "severely reduced financial support at the time she needed it most," the convening authority balanced Appellant's interests against the severity of Appellant's crimes and the effect of deferment on good order and discipline and denied the request. Without the necessary showing of prejudice, we find the error does not warrant relief. *See United States v. Jalos*, No. ACM 39138, 2017 CCA LEXIS 607, at \*5–6 (A.F. Ct. Crim. App. 5 Sep. 2017) (unpub. op.) ("Even when there is error in the convening authority's action on a deferment request, relief is only warranted if an appellant makes a colorable showing of possible prejudice.").

## III. CONCLUSION

The finding of guilt and the sentence are correct in law and fact and no error materially prejudicial to the substantial rights of Appellant occurred. Articles 59(a) and 66(c), UCMJ, 10 U.S.C. §§ 859(a), 866(c). Accordingly, the findings and sentence are **AFFIRMED**.

FOR THE COURT

CAROL K. JOYCE
Clerk of the Court